ELLA HOLMES v. THE STATE.

No. 1648. Decided November 24, 1897.

**1. Continuance—Postponement.**

On a trial for hog theft, where defendant was arrested on the 18th of August, and notified that her case was set for trial on the 21st, it is no ground for either a continuance or postponement that defendant "was too poor to employ counsel, and that she had no witnesses summoned because she did not know what would avail her, owing to the nature of her defense;". especially where the absent witnesses lived within two or three miles of town and could have been summoned within a very short time if process had issued.

**2. Misconduct of Jury—Receiving Other Testimony—New Trial.**

On a trial for theft, where it was made to appear, on motion for new trial, that after the jury had retired to consider of, and before they had agreed upon, their verdict, two of the jurors told their fellows that defendant was the biggest rogue they ever heard of; that she ought to be hung, and that they would be willing to hang her if the law would permit it; and one of the said jurors mentioned several instances of theft by defendant; Held, that inasmuch, for aught that appears, these statements might and perhaps did tend to influence the minds of the jury in determining the guilt or innocence of defendant, the judgment should be reversed.

APPEAL from the District Court of Sabine.    Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction of hog theft, penalty assessed being two years imprisonment in the penitentiary.

No statement of the case is necessary.

[No briefs for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of hog theft, and given two years in the penitentiary; hence this appeal.

There are several questions presented for revision upon the face of the record and the rulings of the court on the trial of this case. The motion to postpone the case is in such condition that we deem it unnecessary to notice it. It was signed by appellant's counsel, and alleges that his client was unable to employ an attorney, and he volunteered his services to advise her; that the appellant "had no witnesses subpoenaed in her behalf, because she did not know what would avail her, owing to the nature of her defense." Counsel states in the motion that the defendant has a legal and legitimate defense, if he had time to prepare it, and have witnesses summoned, which would take until the 23d instant. This motion was made on the 21st of August, 1897. There was no process issued for the witnesses, and there is nothing stated that brings the application or motion within the rules laid down by the Code of Criminal Procedure, with reference to continuance and postponement of trials. Besides, the court qualifies the bill, stating that appellant was arrested on the 18th of August, notified that her case was set for trial on the 21st, and that the parties all lived within two or three miles of town. If this.

be true—and it is uncontradicted in this regard—appellant could have secured all the witnesses within a very short time, but no process was issued.

There is a serious question, however, arising on the motion for a new trial. After the jury had retired, and before they had agreed upon a verdict, the jurors Dave Davidson and Jesse King told the jury that the defendant was the biggest rogue they had ever seen or heard of; and they further stated that she ought to be hung, and they would be willing to hang her if the law would permit it. Jesse King informed said jury of several instances of the defendant's thefts; among others, of the theft of Frank King's cotton, breaking into George Bristow's house, also of stealing chickens, as well as the theft of a breastpin from Mrs. Polly. The fact that these statements were made to the jury is uncontradicted by the State, and the two jurors making the statement were for the extreme penalty of the law (four years) when they first retired, but finally one of them, on the following morning, agreed to the minimum punishment of two years, and late that evening the other agreed to it. These statements stand uncontradicted. The State did not make an effort to impeach these statements, or break the force of them in any way, so far as this record discloses. It is not shown in the record anywhere that appellant, in testing these jurors, inquired of them as to their bias or prejudice against the accused, or if they had any conclusion as to her guilt or innocence, and we take it that this phase of the case was not inquired into. If they had asked the questions of the jurors, and the answer had been that they had no prejudice against defendant, and had come to no conclusion as to her guilt or innocence, and she had been thus misled, that question would be revisable. But, as before stated, this was not done. As to the misconduct of these jurors in testifying to these facts, or in making these statements before the jury, we believe the judgment ought to be reversed. As it is presented to us from the record, these statements were made to the jury before they had agreed upon their verdict, and we are left in the dark, or required to invade the field of conjecture in order to ascertain that these statements may not have injured the accused. If the statements had been made after they had agreed upon a verdict, we would have a different question; but it is made to appear that it might have entered into, and perhaps did, influence the minds of the jury in determining the guilt or innocence of the defendant. The judgment should be reversed. See Washburn v. State, 31 Texas Crim. Rep., 352; Mitchell v. State, 36 Texas Crim. Rep., 278; Terry v. State (Texas Crim. App.), 38 S. W. Rep., 986; Tate v. State, ante, p. 261.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*