## L. V. THOMPSON v. THE STATE.

### No. 5293.   Decided April 2, 1919.

1.—Murder—Charge of Court—Communicated Threats.

Where, upon trial of murder, and a conviction of an assault to murder, the evidence raised the issue of communicated threats upon which the court refused a requested charge applicable thereto, the same was reversible error.  Following Fielding v. State, 48 Texas Crim. Rep., 334, and other cases.

2.—Same—Defendant's Standpoint—Self-defense—Abandonment of Difficulty.

Although there was evidence that defendant fired both shots at the deceased while he was retreating and the defendant was pursuing after the deceased had stabbed defendant, it was not manifest that the deceased had abandoned the contest; and the intention of deceased must be judged from defendant's standpoint at the time he fired, and the court should therefore have charged on communicated threats in connection with self-defense.  Following Bordeaux v. State, 58 Texas Crim. Rep., 61, and other cases.

3.—Same—Provoking Difficulty—Self-defense—Charge of Court—Aggravated Assault.

If a charge on the law of provoking the difficulty is to be submitted, it should not only embody the theory of provocation but the jury should be told that if it was done with no intent to kill deceased or do him serious bodily harm that defendant would be guilty of aggravated assault only.  Following Green v. State, 12 Texas Crim. App., 445, and other cases.

Appeal from the District Court of Howard.   Tried below before the Hon. W. W. Beal, judge.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*H. R. Debenport,* for appellant.—On question of communicated threats:  Waters v. State, 80 Texas Crim. Rep., 573, 192 S. W. Rep., 778.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant under indictment for murder was convicted of an assault with intent to murder and his punishment assessed at confinement in the penitentiary for a period of two years.

The deceased was shot by appellant with a pistol, the bullet striking his leg below the knee, fracturing the bone. The evidence presented the theory that the death of deceased did not directly result from the wound but was caused by gross neglect. This was submitted to the jury and determined in appellant's favor. The State predicated the view that appellant in shooting at deceased acted upon malice, from evidence that the deceased's wife and her sister were occupants of appellant's home and that appellant desired the wife of deceased for his paramour, and upon

this motive sought and embraced the opportunity to kill the deceased. The appellant had, according to his testimony, been carrying a pistol for some several months prior to the homicide for the purpose of protecting himself from threats against his life made by other persons. The wife of deceased and her sister had been occupants of appellant's home, where he lived with his wife prior to the marriage of deceased, and subsequent to the marriage deceased and his wife resided with appellant for a time. Shortly before the homicide there had been a separation of deceased and his wife, she remaining at appellant's house. On the day of the homicide, which took place in the evening, the appellant claimed that the deceased's wife and her sister had been guilty of some misconduct and that he had determined to exclude them from his premises. The evidence of the witnesses is in agreement to the point that immediately before the homicide deceased and his wife were talking together on the street; that appellant and one Miller approached them, that some words ensued, that the appellant struck the deceased with his hand, that the deceased had his open knife . and with it stabbed appellant, seriously wounding him; that after receiving the wound appellant drew his pistol, the deceased fleeing, and in his flight was twice fired upon by the appellant, the second shot inflicting the wound; that when he was shot the deceased fell to the ground and the appellant fell from the result of the wound he had received about the same time.

The *res gestae* statement of the deceased was introduced by the State, and in substance it was that deceased and his wife had walked out on the railroad and started back; that she was staying at appellant's house; that while talking to her he heard some one coming and looking up saw appellant and Miller approaching; that appellant spoke to him, saying: "I told you not to come around my house," to which the deceased replied that he was not at his house; that they began to wrangle, that appellant slapped him and Miller told appellant to shoot deceased: that deceased stabbed appellant and thereafter the appellant drew his pistol when the deceased fled. An eyewitness for the State said that he passed the deceased and his wife while they were talking on the street and met the appellant and Miller walking fast in the direction of where the deceased stood; that shortly thereafter he heard a voice say: "What in the hell do you fellows want," and heard the reply in substance, "You can't come around my house," and turning he observed the parties apparently in a fight, that deceased ran, appellant pursued and fired twice, the first when they were about thirty feet apart, the second when about one hundred feet separated them. Appellant claimed that he had no improper relations with the wife of the deceased or her sister; that their conduct was such that his wife on the day of the homicide had told the girls to leave; that he had determined that they should leave his house

10—85 T. C. R.

that night and that when he saw the deceased and his wife he approached them for the purpose of seeing that they left his house that night; that in approaching them he had no intention of hurting them, no idea of having a fight or shooting; that it was his intention to run them off from his house because they had not been acting right; that when he reached a point within five or six feet of them deceased pushed his wife aside with his left hand and came towards appellant with his knife with the blade open; that the deceased had his head down like he was going to butt appellant and coming towards him, and when he came close enough appellant hit him twice with his fist, and the deceased struck the knife in him. That the wound shocked him and he fell backwards and felt pain; that he did not fall down but caught himself and got out his pistol and while holding his entrails to prevent their protruding through the wound he pursued deceased believing that he was going to a building nearby to get a pistol and renew the contest. That when deceased started toward him with the knife he did not draw his gun but had hardly time to hit deceased with his hand; that he did not think the deceased was a coward and did not figure that he was intending to kill him, and was not afraid of him, but that he believed that if he had not had his pistol deceased would have killed him with the knife. There was evidence introduced to the effect that the deceased had made threats against the life of appellant which had been communicated to him.

The court submitted the issues of murder, assault with intent to murder and self-defense, and in connection with the latter charged on the law of provoking the difficulty with intent to kill or inflict serious bodily injury. The court failed to charge on the law of communicated threats and refused a special charge applicable thereto, to which action exception was duly reserved. It has been often ruled that where the facts are such as to require an instruction to the jury on the law of self-defense growing out of apparent danger, and there have been introduced previous threats of the deceased against the accused which were communicated to him prior to the difficulty, that it is incumbent upon the court to embody in his charge the law of communicated threats. Alexander v. State, 25 Texas Crim. Rep., 266; Fielding v. State, 48 Texas Crim. Rep., 334.

The State's counsel insists, however, that the facts did not call for a charge upon the law of self-defense and predicates thereon a proposition that the omission of the charge on the law of threats was justified. The appellant fired both the shots at the deceased while he was retreating and the appellant was pursuing him, and after the deceased had stabbed appellant. One of the shots was fired when the deceased had gone about ten steps and the other when he had gone about thirty steps. If deceased had abandoned the conflict then appellant was in no immediate danger

and not justified in shooting deceased. Lynch v. State, 24 Texas Crim. App., 550, 5 Amer. State Reports, 888; Faubian v. State, 83 Texas Crim. Rep., 234, 203 S. W. Rep., 897.

The intentions of deceased, however, should be judged by their appearance from appellant's standpoint at the time he fired, and thus viewed we are not prepared. to say as a matter of law that it was manifest to appellant that the deceased had abandoned the contest. The learned trial judge did not so view it and in submitting the issue to the jury there are cases involving similar facts supporting him. Notably Lawson v. State, 50 S. W. Rep., 345; Bordeaux v. State, 58 Texas Crim. Rep., 61; · Crow v. State, 48 Texas Crim. Rep., 419; Airhart v. State, 40 Texas Crim. Rep., 470.

If the Assistant Attorney General's view, however, that self-defense was not raised, were accepted as correct, it would follow, we think that the charge on provoking the difficulty was unauthorized. That phase of the case arose only as a qualification of the law of self-defense. Burnett v. State, 51 Texas Crim. Rep., 20; Branch's An. Texas P. C., sec. 1955. The charge on provoking the difficulty put the appellant at the disadvantage of suggesting to the jury that in the opinion of the court, there was evidence that appellant was in the wrong in the beginning; that he invited the contest with the deceased in order to kill him. Particularly is this true when it is recalled that the evidence is quite conflicting as to who was the aggressor in the beginning of the conflict. Rodriquez v. State, 58 Texas Crim. Rep., 397; Tillery v. State, 24 Texas Crim. App., 251.

If upon another trial the law of provoking the difficulty is submitted it should embody not only the theory of provocation with intent to kill or seriously injure, but the jury should be told in appropriate language that if the appellant provoked the difficulty with the intent to injure the deceased but with no intent to kill him or do him serious bodily harm, and afterwards fired upon him for the protection of his own life against a threatened assault by the deceased, that his conviction could not be for a higher grade of offense than aggravated assault. Young v. State, 41 Texas Crim. Rep., 442; Branch's An. Texas P. C., sec. 2057; Green v. State, 12 Texas Crim. App., 445; Sanders v. State, 50 Texas Crim. Rep., 430; Carter v. State, 28 Texas Crim. App., 55; Soles v. State, 76 Texas Crim. Rep., 230, 174 S. W. Rep., 343.

We think there was error in failing to charge upon the law of threats and by reason thereof the judgment is reversed and the cause remanded.

*Reversed and remanded.*