### E. H. BOAZ v. THE STATE.

No. 5508. Decided November 10, 1920.

Rehearing denied June 15, 1921.

1.—Murder—Continuance—Want · of Diligence—Cumulative Testimony.

Where, upon trial of murder, defendant's application for continuance showed a want of diligence and the absent testimony was but cumulative upon an uncontroverted issue, there was no error in overruling the motion for continuance and the motion for new trial.

2.—Same—Evidence—Husband and Wife—Cross-Examination—Same Transaction.

Where, upon trial of murder, the defendant introduced his wife as a witness and proved by her that she had had clandestine correspondence with the deceased, and had met him at a certain hotel and occupied a room with him for several hours with the doors locked. there was no error in permitting the State on cross-examination of the wife to show that at this meeting no criminal conduct took place, as a part of the transaction introduced in evidence by the defendant.

3.—Same—Self-defense—Threat—Defendant's Right to Arm Himself—Charge of Court.

Where the court instructed the jury upon the law of self-defense embodying the right to defend against apparent as well as against real danger, and also charged upon defendant's right to act upon a demonstration manifesting the intent upon the part of the deceased to carry out a threat and in no way abridged the right of perfect self-defense, it was not incumbent upon the court to instruct the jury that defendant had a right to arm himself in anticipation of an attack from the deceased; besides, a requested charge upon this phase of the case was submitted. Following Smith v. State, 81 Texas Crim. Rep., 368, and other cases.

4.—Same—Charge of Court—Self-defense—Retreat—Reasonable Doubt.

Where the court instructed the jury that the defendant had the right to use any means at his command to protect himself, and that he was in no event bound to retreat, there was no error in failing to repeat the instruction at the request of defendant, and the same is true with reference to the law of communicated threats, or his failure to instruct the jury in charging on the law of threats to grant the defendant the benefit of reasonable. doubt; the court having instructed the jury with reference to reasonable doubt. Following Simpson v. State, 81 Texas Crim. Rep., 389, and other cases.

5.—Same—Right to Continue to Shoot—Charge of Court.

Upon trial of murder the defendant's testimony raised the issue of self-defense upon previous threats and apparent danger at the time he fired the first shot, and he disclaimed any knowledge of what subsequently occurred,

and there was no evidence which required a charge instructing the jury that the defendant had the right to continue to shoot, viewed from his standpoint, there was no error in the court's failure to instruct on this phase of the case.

**6.—Same—Rehearing—Reasonable Doubt—Charge of Court—Article 743, Vernon's C. C. P.**

Where, upon trial of murder, no exception was presented to the court's charge specifically pointing out that the reasonable doubt should have been contained in the various charges on threats and self-defense, as required under Article 743, Vernon's C. C. P., and the main charge being sufficient on this phase of the case, there was no reversible error. Following Walker v. State, 229 S. W. Rep., 527. Distinguishing Johnson v. State, 29 Texas Crim. App., 150.

**7.—Same—Self-defense—Charge of Court—Requested Charge—Standpoint of Defendant.**

Upon trial of murder, there was no error in refusing a requested instruction instructing the jury that in passing upon the issues of the instant case, it was their duty to place themselves as nearly as they could in the place of the defendant at the time of the homicide, and to view all the attending facts and circumstances as they reasonably appeared to him at the time from his standpoint, and not as they appeared to them; the court having sufficiently covered this phase of the case in his main charge.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of manslaughter; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*Baskin, Dodge, Eastus & Ammerman, Puckitt, Mount & Newberry, Reid Williams, and Black & Smedley,* for appellant. On question of continuance: Pearson v. State, 120 S. W. Rep., 1004; Presley v. State, 131 id., 332; Valigura v. State, 150 id., 778; Hays v. State, 164 id., 841.

On question of refusal of requested charges on self-defense: Black v. State, 1 Texas Crim. App., 368; Sebastian v. State, 57 S. W. Rep., 820; Mitchell v. State, 96 id., 43.

On question of cross-examination of wife: Bluman v. State, 26 S. W. Rep., 75; Yeiral v. State, 119 id., 848; Young v. State, 127 id., 1058; Johnson v. State, 148 id., 328.

On question of charge of court on reasonable doubt: Johnson v. State, 29 Texas Crim. App., 150; Moore v. State, 28 id., 347; Shamberger v. State, 24 Texas Crim. App., 433; Rutherford v. State, 48 Texas Crim. Rep., 432; Bird v. State, 49 id., 205; Moody v. State, 52 id., 232; Henderson v. State, 51 id., 194; Stewart v. State, 51 id., 223; Castro v. State, 146 S. W. Rep., 553.

On question of requested charges and objections to the court's charge: Sorrell v. State, 169 S. W. Rep., 399.

On question of apparent danger and self-defense: Simmons v. State, 55 Texas Crim. Rep., 441; Kirklin v. State, 164 S. W. Rep., 1016.

*R. H. Hamilton,* Assistant Attorney General, and *J. Willis Pierson,* District Attorney, *M. T. Lively, Cavin Muse, Robert B. Allun,* and *Robert B. Allen, Jr.,* for the State.—On question of cross-examination of wife of defendant: Merritt v. State, 40 Texas Crim. Rep., 362; Buchanan v. State, 41 id., 129; Brown v. State, 61 id., 336; Kirby v. State, 150 S. W. Rep., 456.

On question of burden of proof: Lewis v. State, 59 S. W. Rep., 886; Day v. State, 21 Texas Crim. App., 213.

MORROW, Presiding Judge.—Appellant shot and killed Mc-Dowell. Indicted for murder, he was convicted of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of five years.

The appellant was about thirty-four years of age, had been married about nine years; his wife was about thirty-one years of age, and there was one child. Before the marriage deceased had been a suitor of appellant's wife, and after the marriage there had been conducted between the deceased and Mrs. Boaz a clandestine correspondence, and interviews had taken place, of which the appellant was ignorant at the time. A few days before the homicide, Mrs. Boaz with her child left her home in Memphis, Texas, and disappeared. The appellant went to Dallas in search of her, and made inquiry of the deceased over the phone touching her whereabouts, and was denied information. Appellant went to Navarro County in search of his wife, and there, in conversation with a friend of hers, learned of clandestine correspondence that had taken place some time before. He had in the meantime intercepted some of the letters from the deceased, and had concluded from them that the relations between the deceased and his wife were suspicious, if not criminal, and in one of the letters there was embodied, according to the evidence, a threat against the appellant. Returning to Dallas, the appellant went into a barber shop in which the deceased worked, though appellant had not seen him for a number of years, and, according to his theory, did not know him. The deceased, taking a satchel or grip and putting some articles in it, left the barber shop, and the appellant, hearing the name of the deceased called, followed him, and, according to his theory, overtook him while the deceased was in the act of putting his grip into an automobile; and, upon appellant's accosting deceased and seeking information, the deceased assumed a hostile attitude, and attempted to open the grip, as appellant believed, to secure a pistol, whereupon the appellant shot. There was testimony introduced to the effect that a pistol was seen in the grip in the car of the deceased after the homicide. This, however, was controverted.

It was shown by Mrs. Boaz, who was introduced as a witness on behalf of her husband, that a clandestine correspondence had been conducted between her and the deceased, and that on one or more occasions she had met the deceased in a hotel in Dallas, and had been

alone with him in a room with the door locked for a considerable time; that on the occasion of her disappearance she had come to Dallas, and had seen the deceased, and had a meeting with him of the kind described above in the hotel. She also testified upon behalf of appellant that there was a threat against the appellant in one of the deceased's letters which had come to the knowledge of the appellant, and that because of the knowledge acquired touching the correspondence appellant was furious.

The State's theory and testimony indicated that the appellant went into the barber shop where the deceased worked, wearing a handkerchief over his face as a means of disguise, and that when the deceased left the shop, the appellant followed him; that before leaving, McDowell stated he was going out to shave a man, and would be back soon. There were three wounds on the deceased, each of them entering the back. A state witness said that while talking to a man on the street, his companion said, "Look," and he saw McDowell running, and the appellant following him. They were about forty or fifty feet apart; that he saw the first shot fired, which was fired when they were about fifty or sixty feet distant from each other. The deceased was running, had nothing in his hands that could be seen. They continued to run until the third shot was fired, when McDowell fell; that between the first and the third shots McDowell ran something like ninety feet. Another witness said he saw McDowell put something in the car, and turn as though to crank the car; that he looked up, and appeared surprised and startled, and then turned and ran fast, and the witness saw the appellant with a pistol in his hand. The parties went out of the sight of the witness before the first shot was fired.

The refusal to grant a continuance is made the subject of complaint. The absent witnesses named in the application were Albert Wesley and Joe Davis. It is charged in the application, which was the first, that Joe Davis was a resident of Memphis, Texas, but temporarily stationed at Camp Travis in San Antonio, and was a member of 353rd Motor Truck Company. The indictment was filed on March 11, and the day fixed for the trial was April, 8. A subpoena was issued for Joe Davis at the address mentioned in the application March 26, and returned not executed on the 29th of March, 1919. We have discovered in the record no reasons stated for the failure of the appellant to apply for the subpoena for the witness at an earlier date. Fourteen or fifteen days elapsed between the filing of the indictment and the issuance of the subpoena. In the meantime, the case was set for trial the 8th of April. The subpoena was returned not executed some nine or ten days before the date of trial, and the record shows no effort of the appellant after the subpoena was returned to secure the attendance of the witness. The affidavit of the witness attached to the motion for a new trial indicates that during all of the time from March 6 until April 8 he was at San Antonio with Motor Transport Corps No. 353. In his affidavit it is stated "that he was in said camp continuously from the

sixth day of March, 1919, and a casual inquiry at his camp headquarters would have disclosed his whereabouts between said date of March 6 and April 8, 1919." This affidavit indicates that by the exercise of diligence the appellant could have secured the attendance of the witness. The fact that the subpoena was returned on the 29th day of March, three days after it was issued, with the statement by the officer that the witness had not been found, would not, we think, excuse further effort on the part of the appellant to procure his attendance. The case of Todd v. State, 57 Texas Crim. Rep., 26, is in point. The indictment was filed January 23. The subpoena was returned the 27th day of January, and the trial began the 2nd of February. The accused having failed to apply for other process, his diligence was held imcomplete. Other cases in point are Holmes v. State, 38 Texas Crim. Rep., 370; Cromwell v. State, 59 Texas Crim. Rep., 525; Jones v. State, 65 Texas Crim. Rep., 69, 144 S. W. Rep., 252; Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W., Rep., 317; Dean v. State, 29 S. W. Rep., 477; Stephens v. State, 69 Texas Crim. Rep., 437, 154 S. W. Rep., 996.

The subpoena relied on for Albert Wesley was issued the 5th day of April, and in the return it is disclosed that he had left for Virginia a year before, and was in the army. Wesley was a resident of Dallas County, and the return on the subpoena indicates that knowledge of his departure of the State, if not possessed by the appellant, could have been acquired by him by the use of diligence, and the deposition of Wesley taken if desired. And apparently, if the subpoena for him had been issued soon after the indictment was filed, the information would have come to appellant by means of a return on the subpoena within time to have taken his deposition.

The witness D_vis, if present, would have testified that about a year before the homicide he was in the barber shop in the Oriental Hotel, and the barber shaving him stated that he was the suitor of Mrs. Boaz before her marriage, and that before she was married she was a good woman, and that Dr. Boaz was no man at all and had caused her to do as she had, and further stated that Dr. Boaz knew of correspondence with his wife, was jealous of the barber, and was watching him; that the barber further stated that he was expecting trouble with Dr. Boaz, and would be prepared to protect himself against him. By the witness Wesley the appellant expected to show that he carried letters written by appellant's wife to deceased, and by the deceased to her. In passing upon the motion for a new trial, the court had before it the evidence in the case, which disclosed without controversy, as we understand the record, that a clandestine correspondence was conducted between the deceased and appellant's wife. The testimony of Wesley, therefore, was but cumulative upon an uncontroverted issue. The testimony of Davis was in part upon a similar issue, though it also tended to show an uncommunicated threat made by the deceased against the appellant. This evidence would have been admissible as bearing upon the question of self-defense, but inasmuch as it was

shown by the evidence, and not disputed, that the deceased had made a threat against the appellant which was communicated to him, we would not feel warranted in holding that the evidence was so important as to show an abuse of discretion by the trial judge in failing to grant a new trial for the absence of the witnesses, the diligence to secure his attendance falling short of the legal requirements.

The appellant having introduced his wife as a witness and proved by her that she had had clandestine correspondence with the deceased, and had met him at the Oriental Hotel in Dallas and occupied a room with him for several hours with the doors locked, the cross-examination of his wife developing that at this meeting no criminal conduct took place was, we think, germane to the direct inquiry and legitimate cross-examination. The appellant having on his direct examination disclosed the meeting between his wife and the deceased, it was proper for the State to interrogate her as to all that took place between them. Their conduct while in the room was a legitimate subject of inquiry. It was a part of the same transaction, and was within the statute which says:

"When a detailed act, declaration, conversation, or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." C. C. P., Art. 811. Appellant having called his wife as a witness to prove a part of the transaction, she became competent to prove it all.

The court instructed the jury upon self-defense, embodying the right to defend against apparent as well as against real danger, and also charged upon appellant's right to act upon a demonstration manifesting the intent upon the part of the deceased to carry out a threat. The charge in no way qualified or abridged the right of perfect self-defense. In this state of the record, it was not incumbent upon the court to instruct the jury that appellant had a right to arm himself in anticipation of an attack from the deceased. The complaint of his failure to do so, however, is not tenable for the further reason that the court gave a charge prepared by the appellant to the effect that the appellant had the right to seek the deceased, and in doing so to arm himself, and that his so doing would not be considered as a circumstance against him, and would in no wise impair his perfect right of self-defense. Williford v. State, 38 Texas Crim. Rep., 393; Alfred Smith v. State, 81 Texas Crim. Rep., 368.

The court, in the thirteenth paragraph of his charge, having instructed the jury that the appellant had the right to use any means at his command to protect himself, and that he was in no event bound to retreat, was not in error in failing to repeat the instruction at the request of the appellant. And the same is true with reference to the law of communicated threats. Nor does it occur to us that in charging on the law of threats the court failed to instruct the jury to grant the appellant the benefit of reasonable doubt. The instruction given was

to the effect that if they believed that the appellant had been informed that a threat had been made, and that at the time he shot the deceased the latter did or was doing some act, or spoke some word, which from appellant's standpoint appeared to him to indicate or manifest an intent on the part of the deceased to carry such threat into execution, the killing would be justifiable; and in the succeeding paragraph the jury was instructed that if they believed beyond a reasonable doubt at the time the appellant shot him, the deceased did or was doing no act, or spoke no word, which from appellant's standpoint reasonably appeared to him to indicate or manifest an intention on deceased's part to carry the threat into execution, then the appellant could not justify upon the ground of threats.

A general instruction to the effect that the burden of proof was upon the State to prove the guilt beyond a reasonable doubt, and that in case of a reasonable doubt they would acquit, was embraced in the charge. We find no exception to the charge upon the ground that the law of reasonable doubt was not sufficiently charged on. The criticism in the brief of counsel is based upon the refusal by the court to give certain instructions requested by the appellant. These instructions, so far as they relate to the subject of the law of threats, were nothing more than substantial repetitions of the paragraphs of the main charge upon that subject. They were no more definite upon the subject of reasonable doubt than was the main charge, and no special charge, specifically directed to the amendment of the supposed omission in the court's charge to fully instruct on the law of reasonable doubt, appears to have been requested. The rule of law applicable to the matter in hand, we think, is given in Powell's case, 28 Texas Crim. App., 398, from which we quote:

"With respect to the charge on threats and self-defense, the objection is urged that it requires the jury to *believe* that the facts existed which constituted self-defense before they could acquit defendant, whereas the law is that if they entertained a reasonable doubt of the existence of such facts they should acquit him. In this case the court charged the rule of reasonable doubt generally, making it applicable to the whole case, and under repeated decisions of this court this was sufficient. McCullough v. State, 23 Texas Ct. App., 620; Ashlock v. State, 16 Texas Ct. App., 13; Barr v. State, 10 Texas Ct. App., 507."

Instances in which this rule has been approved are numerous. See Rose's Notes on Texas Reports, vol. 5, p. 775; Simpson v. State, 81 Texas Crim. Rep., 389; Head v. State, 82 Texas Crim. Rep., 214; and cases collated; Clay v. State, 75 Texas Crim. Rep., 387, 170 S. W. Rep., 744; Vernon's Texas Crim. Statutes, Vol. 2, p. 684.

Complaint is made of the failure to instruct the jury at the request of appellant that he had a right to continue to shoot as long as the danger continued, as viewed from his standpoint. The necessity of such a charge in a given case depends upon the facts and the manner in which the issues are submitted to the jury. Clark v. State, 56 Texas

Crim. Rep., 295; Smith v. State, 57 Texas Crim. Rep., 455; Woodward v. State, 54 Texas Crim. Rep., 89. There are cases in which such a charge is required to protect the accused under the law of manslaughter. These are cases, however, in which the conviction is for murder. Lagrone v. State, 84 Texas Crim. Rep., 609, 209 S. W. Rep., 411. There being no charge submitting the theory that the appellant fired the subsequent shots after the danger had ceased, the inquiry is. does the evidence suggest that in firing the subsequent shots he was under a reasonable apprehension, as viewed from his standpoint, that the danger continued? Lynch v. State, 24 Texas Crim. App., 350; Faubian v. State, 83 Texas Crim. Rep., 234, 203 S. W. Rep., 898; Thompson v. State, 85 Texas Crim. Rep., 144, 210 S. W. Rep., 801, and cases cited. The court instructed the jury in a special charge that if the first shot inflicted a mortal wound, and that in firing it the appellant was acting in self-defense, they would not consider as a circumstance against him that he had fired additional shots, or inflicted upon the deceased additional wounds, which were not fired or inflicted in self-defense. The evidence tended to show that each of the wounds was fatal. Looking to the evidence, it appears from appellant's testimony that he followed the deceased out of the barber shop for the purpose of conversing with him. He had seen the deceased put something in a satchel, and carry it with him out of the barber shop. Appellant saw deceased at his automobile, and the appellant said:

"He said he didn't care to have any conversation with me, had had all he wanted out of me, and began to dig in the grip which he had in the automobile, and I reached for my gun. At that time he started back, and I shot him. I thought he was going after a gun in the grip, is the reason I shot. I could not tell what it was, but I saw him put something in the grip, and he was taking it out, trying to open it, and when he saw me pull my gun he started away. He was looking at me when I pulled my gun. I don't know how many times I shot. I don't know whether he turned and ran. I don't know anything at all about that. I don't know whether he stayed there or not. I know I shot. I saw him going into the case. He said angry words. I don't know whether I was shooting him to death as he was running from me. I don't know that I shot him three times in the back, cannot recall anything after I shot him."

The State's theory and testimony is that when the deceased saw the appellant he fled, and that when the first shot was fired they were forty or fifty feet apart, and that the deceased continued running, the appellant pursuing him, the distance between increasing; that all the shots took effect in the back; that the deceased at the time he fled was without arms. Neither in the testimony of the State nor the appellant do we find any evidence which impresses us as raising an issue calling for a charge upon appellant's right to continue to shoot. Viewing the State's testimony, there was no issue of self-defense—the deceased was fleeing, he was unarmed, he had abandoned the difficulty.

In its strongest light, the appellant's testimony raises the issue of self-defense upon previous threats and apparent danger at the time he fired the first shot. He disclaims any knowledge of what subsequently occurred, and, so far as we are able to discern, there is an absence of evidence which requires a charge instructing the jury that the appellant had the right to continue to shoot while, viewed from his standpoint, the danger existed. There was never any danger, real or apparent, from the State's testimony, the deceased was fleeing from the start. The appellant discloses what operated upon his mind at the time he first fired, but furnishes by his evidence no basis for an affirmative charge that the subsequent shots were fired on the belief that the danger had not ceased.

After a careful examination and consideration of each of the matters presented for review in the record, we are constrained to conclude that no error is disclosed which would justify or authorize a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

ON REHEARING.

June 15, 1921.

HAWKINS, Judge.—Appellant insists in his motion for rehearing that the trial court erred in the 14th and 17th paragraphs of his charge in shifting the burden of proof on the defensive issues, and that these matters were sufficiently pointed out by the special charges Numbers five and eleven, which were refused, and that our opinion heretofore rendered is erroneous.

No objection is made now to the 14th and 17th paragraphs, except that they should have concluded with a statement "or if you have a reasonable doubt thereof." Without going into a discussion of the many cases cited by appellant in his brief, we desire to revert to the acts of the Legislature in 1913, Article 743, Vernon's C. C. P. No exception was presented to the court's charge specifically pointing out an omission in the particular now complained of, and while the special charges requested contained a proper clause with reference to the "reasonable doubt" as applied to the defensive issues, yet, there was nothing in the special charges, or in any objection to the main charge to pertinently call the court's attention to the matter now urged as error. The last clause in Art. 743 reads: "And all objections to the charge, and on account of refusal or modification of special charges shall be made at the time of the trial." If what is now urged as such a serious objection was at the time of the trial overlooked by the able attorneys representing appellant, is it likely any great harm befell appellant by reason thereof? The jurors know very well what the main issues in the case were, and it is not to be presumed by this court that they indulged in the refinement of analysis in the consideration of the case as do attorneys in discussion of legal propositions. For the court

to hold that the requesting of a special instruction, which the trial court could legitimately consider as a substantial repetition of his main charge, can take the place of an objection which should pertinently point out the matter complained of would virtually work a repeal of the statute. We do not desire to be understood as holding that where the special charge goes to some substantial matter, it would not in some cases be erroneous to refuse it, even though no objection was presented because of its omission from the main charge; yet, where the complaint only goes to the omission of a few words, we feel that in justice to the trial courts, and to make effective the law referred to, objectionable omission should be pointed out by exception then made. The case of Walker v. State, 229 S. W. Rep., 527, presents very much the same situation, and sustains what we have written.

In the brief and argument upon rehearing we are referred to Johnson v. State, 29 Texas Crim. App., 150, and the line of authorities following that case, as laying down a more correct rule than the one announced in Powell's case, 28 Texas Crim. App., 398, and others referred to in our original opinion. Perhaps we did not make our meaning clear. Just preceding the reference to the Powell case this language was used: "We find no exception to the charge upon the ground that the law of reasonable doubt was not sufficiently charged on," and then follows a statement in which we were inaccurate, to the effect that the special charges requested were no more definite upon the subject of "reasonable doubt" than was the main charge. What we were undertaking to say was, that in the absence of an exception pointedly calling the court's attention to an omission as to "reasonable doubt" applied to each defensive issue, the Powell case announces a correct rule.

Appellant requested the following special instruction: "You are instructed that, in passing upon the issues in this case, that it is your duty to place yourselves as nearly as you can in the place of defendant at the time of the homicide, and to view all the attendant facts and circumstances as they reasonably appeared to him from his standpoint, at the time, and not as they may appear to you now." We do not think it was necessary to submit this charge. The court had already told the jury that "it was not necessary that there should be actual danger, as a person has the right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time."

We have carefully examined the other grounds urged in support of the motion for rehearing. They were all considered and discussed in the original opinion, and we believe correctly disposed of.

While we might have reached a somewhat different verdict had we occupied the place of jurors, yet passing upon the case in the light of the record, the judgment must be sustained, and the motion for rehearing is overruled.

*Overruled.*