Johnnie Rhodes v. The State.

No. 7416.    Decided February 28, 1923.

**1.—Seduction—Indictment—Bad Spelling—Rules Stated.**

Upon trial of seduction, by inadvertence the word "years" was spelled "yeard." This did not vitiate the indictment.

**2.—Same—Requested Charges—Bills of Exception—Rule Stated.**

It is necessary in order to bring before this court for review the refusal of special charges, that either on the charges by appropriate notation, or by separate bills of exception is here presented the fact that such refusal was then excepted to.

**3.—Same—Charge of Court—Bills of Exception.**

When it did not appear that the requested charges had been presented before the argument had begun, and were otherwise not in shape to be reviewed, there was no reversible error. Following Edwards v. State, 237 S. W. Rep., 933.

**4.—Same—Continuance—Want of Diligence.**

Where the application for continuance did not present proper diligence, the same was correctly overruled.

**5.—Same—Sufficiency of the Evidence—Promise of Marriage.**

Where, upon trial of seduction, the testimony of the prosecutrix was sufficiently corroborated, both as to the promise of marriage and the fact of carnal knowledge, there is no reversible error.

Appeal from the District Court of Polk. Tried below before the Honorable J. L. Manry.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Mooney,* for appellant.—Cited: Mullhause v. State, 119 S. W. Rep., 866; Simmons v. State, 114 id., 841.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Polk County of seduction, and his punishment fixed at confinement in the penitentiary for a period of three years.

Appellant questioned the sufficiency of the indictment. Examining same it appears that in alleging that the prosecutrix was an unmarried female "under the age of twenty-five years" the pleader misspelled the word years and made the same appear "yeard." Numerous authorities are cited under Article 476 of Mr. Vernon's Ann. Code of Criminal Procedure in support of the proposition that bad spelling does not vitiate an indictment when the meaning is plain.

Appellant asked three special charges, one of which was given. We cannot consider the alleged error in the refusal of the other two charges because of the fact that neither upon them nor by separate bill of exceptions is it made known to us that appellant excepted to the refusal of such charges. It is necessary in order to bring before this court for review the refusal of special charges, that either on the charges by appropriate notation, or by separate bills of exception is here presented the fact that such refusal was then excepted to.

Appellant's exceptions to the court's charge appear in three separate documents marked A, B and C. Exception A is not approved by the trial court and, therefore, cannot be considered by us as having been presented before the argument was begun or the main charge read to the jury. Kosarek v. State, 90 Texas Crim. Rep., 457. Exception B has on it no statement or notation of the fact that it was present-

ed to the trial court before the main charge was read or the argument begun. Neither exception A nor B are presented here in separate bill. Edwards v. State, 91 Texas Crim. Rep., 196, 237 S. W. Rep., 933.

Exception C presents four grounds,—first, that the charge fails to instruct as to any phase of accomplice testimony. Inspection of the main charge demonstrates the incorrectness of this exception, for the court did tell the jury that the prosecutrix was an accomplice, etc. The second ground is so worded as to present nothing to us by which we may ascertain what was intended. The third and fourth grounds fail here in view of the fact that the special charge asked by appellant and given by the trial court instructs the jury that if prosecutrix surrendered herself to the embraces of appellant on a conditional promise,—that is, that if she became pregnant he would marry her, or unless they believed beyond a reasonable doubt that she did not so surrender her person to him upon such conditional promise, the jury should acquit. This special charge presented affirmatively the only defensive theory supported by testimony. There was no evidence offered in behalf of the appellant at all.

Appellant asked for a continuance but an examination of his application shows it to be without merit. He states therein that he relied upon his belief that the prosecuting witness was not going to testify to any damaging facts against him based on a conversation that he had with her, and therefore he had procured no process for any witnesses. He follows this by an allegation that if he had a witness present by the name of Munson that he could prove by Munson that he had carnal knowledge of prosecutrix about the time of the commision of the offense herein charged against appellant. It is not stated where Munson lives, nor is any reason shown why the case should be postponed in order to get him. For aught that appears in the application Munson might be a resident of the town in which the trial was being had and his presence might have been procured in twenty minutes.

The sufficiency of the evidence is attacked. Prosecutrix testified fully to the promise of marriage and also to repeated acts of carnal intercourse between herself and appellant, granted on her part upon reliance upon his said promise. Upon her cross-examination she averred that she yielded her person to appellant upon his promise to marry her in the event she became pregnant, but later she retracted said statement and undertook to testify before the jury to the conversation that was had between them at the time of the first act. These matters of conflict were for the jury and they have decided them against appellant. As above stated this defensive issue was presented by a special charge in language selected by appellant's counsel. Upon the question of corroboration of the promise of marriage and of the act of carnal intercourse, the prosecutrix testified to having received three letters from appellant, two of which were read in evidence and the fact given

in testimony that the third letter had been burned. In the burned letter she stated that appellant discussed his engagement with her. Her mother testified for the State without objection that she saw and read the letter from appellant in which he discussed with her daughter their engagement. This would seem to sufficiently corroborate prosecutrix upon the matter of promise to marry. On the question of carnal knowledge, it was beyond question that prosecutrix had been carnaily known by some man because she held in her lap at the time of trial a baby born to her in the latter part of June, 1921, said by her to be the fruits of her connection with appellant in September preceding. In addition to the testimony of her intimate association with appellant during the fall of 1920, and of his engagement to her, the two letters of his introduced in evidence abound in expressions from which the conclusion of his carnal connection with her could easily be drawn. In March before her baby was born in June, and following a letter from her to him, he wrote her and among other things we find in the letter the following:

"Dear: I want to know what you are going to tell them when they find this out. Dear for God sake don't tell that it was me. Dear please tell them that it was some one else. . . . Dear if this goes to court what are you going to tell, are you going to talk against me or not, Dear I hope you don't, and in first place I hope you don't let it go to court. . . . Your best loving friend, Johnnie Rhodes. . . . Please tear this letter up."

Again in the letter written by him to prosecutrix in November after the birth of her child we find the following:

"I promised you that I would send you some money, but as it is I haven't got it all that I promised you, but don't you worry about that for I will try my best to get the rest of it in a short time, if I can't get it all just right now I will send you what I have on hand and I will send the other as fast as I can get it. Mary I am working every day and I will just send the money to you, I guess it will be all right wont it dear. You write me and let me know if that will be all right with you or not."

The fear and agitation of appellant—that this would be found out; his promise to send her money; his intimate association with prosecutrix, are for the consideration of the jury.

In our opinion the testimony sufficiently corroborated the prosecutrix upon both the elements required to be established in seduction cases, to-wit: the promise of marriage and the fact of carnal knowledge. These matters have been so often discussed in this State that we do not deem it necessary to cite authorities.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*