## CUNNINGHAM v. STATE. (No. 8124.)

(Court of Criminal Appeals of Texas. May 21, 1924. Rehearing Denied June 18, 1924.)

**1. Homicide ⬅➡301 — Instruction on defense that defendant acted in defense of himself or deceased's sister held sufficient.**

On claim of self-defense and defense of deceased's sister, instruction that defendant should be acquitted, if deceased made an attack on his sister or the defendant, which caused defendant to reasonably fear death or serious injury to one of them, held sufficient on such defense, notwithstanding other instruction that, if deceased was making an attack on defendant, it would be presumed that he intended to kill him, without mention of deceased's sister in the absence of an exception sufficiently specific to inform court that complaint was being urged to such part of charge.

**2. Criminal law ⬅➡1056(1)—Refusal of special charge not available on appeal in absence of exception.**

Refusal of special charge is not available on appeal in absence of exception.

**3. Criminal law ⬅➡742(3)—Weight of testimony of impeached witnesses for jury.**

The weight of testimony of witnesses, who were impeached on material points in their testimony, is for jury.

### On Motion for Rehearing.

**4. Criminal law ⬅➡1091(5)—Exclusion of answer to question as to whether witness heard "anything unusual" at deceased's home held not error.**

In murder prosecution, in which defendant claimed to have acted in defense of deceased's sister, error was not shown in exclusion of answer to question as to whether witness heard "anything unusual" over at deceased's home, the bill of exceptions not showing that witness, if permitted to answer, would have testified that he saw deceased make assault on his sister, or that he would have described disturbance heard by him at deceased's home, so as to permit reasonable conclusion that there was a fight between deceased and his sister; a showing in the bill that witness would have testified that he heard unusual noise and had "learned" that deceased had assaulted and struck his sister being insufficient.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Ed Cunningham was convicted of murder, and he appeals. Affirmed.

Blain & Jones, of Beaumont, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

HAWKINS, J. Appellant is under conviction for the murder of John Cronea with an assessed punishment of ten years' confinement in the penitentiary.

Appellant and deceased had been friends for several years, and appellant was a frequent visitor at deceased's home. Deceased and his wife lived in Beaumont. Louise Winslow, deceased's sister, lived with them part of the time. On the day preceding the killing appellant came to the home of deceased, and, according to the testimony of both appellant and Louise Winslow, the drinking of intoxicating liquor was indulged in by all of them, including Mrs. Cronea. Mrs. Cronea denies that she drank, or that any intoxicating liquor was used by any of the party at the time. It is agreed that early the next morning Mrs. Cronea complained of the loss of $17 which had been taken from the pocket of her dress during the night. Her testimony and Louise Winslow's does not accord with that of appellant relative to this incident. The two women say that when Mrs. Cronea complained of the loss of the money appellant said he had it, returned $12, and agreed to repay the other $5; that no hard feelings or disturbance of any kind occurred with reference to the matter; that deceased was perfectly satisfied with the return of the $12 and the promise to repay the balance, and so expressed himself. Appellant's version is that during the preceding night something had been said about whether he had any money; that he had told deceased he was out of funds, and might want to borrow some; that the next morning Louise Winslow was looking through his pockets for a match, pulled out the $12, and called appellant's attention to the fact that he did have some money; appellant denied knowledge of how the money got in his pocket, and requested Louise to give it to him in order that he might return it to Mrs. Cronea; that a quarrel then ensued between deceased and his sister, deceased accusing her of having taken the money; that in the quarrel deceased struck or slapped his sister several times; that appellant remonstrated with him, whereupon deceased told appellant to keep out of the trouble, if not, deceased would shoot him; that appellant told deceased if he would quit abusing his sister he would take her away from the house; that he and Louise did leave, and were gone probably two or three hours. While they were away, both appellant and Louise had another drink, or drinks, of whisky. The killing occurred almost immediately after their return to deceased's home. The evidence of the two women and that of appellant is in sharp conflict as to the facts of the shooting. According to the women, in a few minutes after appellant and Louise returned appellant was seen by Mrs. Cronea passing through the house with deceased's pistol in his hand; that she informed her husband that Cunningham was leaving with his pistol, whereupon deceased told appellant, if he was going away, not to take his (deceased's) pistol, that he might need it;

that appellant immediately turned and fired at deceased; that deceased ran through the house, and fell in the yard just off the porch. Mrs. Cronea immediately went to a neighbor's to telephone for the officers. Louise testified that, after her brother was shot, she intercepted appellant and put·her hands on him in an effort to detain him until the officers could reach the place; that appellant struck her on the head; that the blow stunned her, but she remembered passing on to the gallery and seeing her brother lying in the yard, and that she fell upon the gallery. She was found lying on the gallery with much blood from a wound upon her head. Both Mrs. Cronea and Louise testify positively that there was no fuss or quarrel, either between deceased and his sister or among any of the parties present immediately before the shot was fired; they deny that any one screamed, or that any licks were passed between anybody. Appellant's version of the transaction after the return of himself and Louise is substantially as follows: That as he came into the house he noticed deceased's pistol lying on the dresser, picked it up, and passed through into the back part of the house, intending. to hide it; that when Louise came in deceased renewed his quarrel with her, using abusive language; that some licks were struck which he heard, and that Louise screamed; that appellant turned back into the room, and met her in the door with blood streaming from her head; that she asked him not to let deceased strike her again; that deceased was coming towards them, used a vile expression, and said, "I will kill both of you s—— o—— b——," that deceased had something in his hand which appellant thought was an ice pick; that he fired at deceased under these circumstances. Appellant specifically denied that he struck Louise, or that she in any way interfered with him when he left the house after the shooting. Two witnesses who lived near the Croneas testified that a short time before the shot was fired they heard a disturbance at Cronea's house, heard something that sounded like licks, and heard Louise scream, followed immediately by the shooting.

The court submitted murder, manslaughter, and self-defense. He predicated adequate cause on deceased's conduct towards both his sister and appellant, thus presenting the manslaughter issue from appellant's standpoint. Some criticism of the charge upon manslaughter is found in the exceptions thereto, but, considered in its entirety, we do not think the objections well founded. No special charge upon the subject was requested.

[1] Appellant predicates one exception to the charge upon the claim that it omits an instruction that appellant would have the right to kill to protect Louise Winslow, but confines appellant's right to act only in his own defense. If there was such omission

from the charge when the exceptions were prepared, it must have been remedied when the court's attention was called to it by the exception, for we find where the court did tell the jury in substance that, if deceased had made an attack on either his sister or appellant, which caused the latter to reasonably fear death or serious injury to himself or Louise Winslow, appellant should be acquitted. In that part of the charge relative to the presumption of law against deceased, if he was armed with a deadly weapon, the court tells the jury, if deceased was making an attack upon "appellant," it would be presumed that he intended to kill him, and does not here include deceased's sister, but no exception is sufficiently specific to point out to the learned trial judge that any complaint was being urged to this part of the charge. Walker v. State, 89 Tex. Cr. R. 76, 229 S. W. 527; Boaz v. State, 89 Tex. Cr. 515, 231 S. W. 790; Rodgers v. State, 93 Tex. Cr. R. 1, 245 S. W. 697; Richardson v. State, 91 Tex. Cr. R. 318, 239 S. W. 218, 20 A. L. R. 1249.

[2] A special charge appears in the record relative to appellant's right to act in defense of Louise Winslow, which was refused. No exception seems to have been saved to this action of the court. It does not so appear from any notation on the charge itself over the court's signature, but only a notation that it was refused. It has been repeatedly held that it must. be made to appear affirmatively that exception was reserved to the refusal of special charges before they were properly before us for review. Craven v. State, 93 Tex. Cr. R. 329, 247 S. W. 515; Brooks v. State, 93 Tex. Cr. R. 206, 247 S. W. 517; Hickman v. State, 93 Tex. Cr. R. 407, 247 S. W. 518; Rhodes v. State, 93 Tex. Cr. R. 574, 248 S. W. 679; Linder v. State, 94 Tex. Cr. R. 316, 250 S. W. 703.

[3] The issues of fact were sharply drawn, and some witnesses both for the state and appellant were impeached upon material points in their testimony, but all these matters were for the jury, which they determined for the state.

Finding no errors in the record which would authorize a reversal, the judgment is affirmed.

### On Motion for Rehearing.

[4] That our former opinion correctly disposed of the matters therein discussed is not challenged. Appellant complains, however, because we did not consider a bill of exception relative to the rejection of evidence from the witness Miles Roberta. The bill was not overlooked. Said witness was asked by appellant if a few days before the homicide he heard "anything unusual" over at deceased's home. Objection was sustained. The ruling appears to have been correct, as the question was so general in its character as not to convey any idea of what was

expected to be elicited as to the character of the "unusual" happening about which witness was interrogated. The bill states that, if witness had been permitted to answer the question, he would have said that either the day before, or second day before, the killing he had "heard an unusual noise at the home of deceased, and had gone there, and learned that deceased had assaulted and struck his sister Louise Winslow." If witness had proposed to describe a disturbance heard by him at the home of deceased, from which description the conclusion could have been reasonably drawn that it was a fight between deceased and his sister, or if witness would have testified that he saw deceased make an assault upon his sister, the rejection of such evidence under the facts of this case would have been error; but the bill does not recite that witness would have so testified. We are only informed by the bill that witness heard some sort of an unusual noise (the character of which is not stated), and that upon going to the house of deceased he had "learned" that deceased had assaulted his sister. The bill carries with it the unmistakable idea that witness would have given testimony hearsay in character, and therefore presents no error. For this reason we did not discuss it in our former opinion.

The motion for rehearing is overruled.