## D. M. JACKSON v. THE STATE.

No. 14140.   Delivered May 27, 1931.

The opinion states the case.

*T. H. McGregor,* of Austin, and *E. A. Camp,* of Rockdale, for appellant.

*A. J. Lewis,* County Attorney, of Cameron, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Under an indictment charging him with murder, appellant was convicted of assault with intent to murder and his punishment assessed at confinement in the penitentiary for five years.

Mrs. Louise Melde and appellant were neighbors. Apparently their relations had been friendly until shortly before the assault. About sixty days prior to the trouble between the parties, appellant borrowed $60 from Mrs. Melde, and she had requested that it be paid. Shortly before the difficulty the foster-daughter of the injured party telephoned appellant, asking that the money be immediately paid. According to appellant's version, he had already paid the money to an agent of Mrs. Melde. Prior to the date of the difficulty some one had taken a pistol from one Joe Elliott. According to the version of appellant, believing that Mrs. Melde's son had taken the pistol, appellant had sought to have him return it to the owner in order to avoid trouble. On the day of the difficulty appellant went to the home of Mrs. Melde for the purpose of collecting an account she was due him. Going to the back door, which, according to his testimony, was his custom, he was invited in by Mrs. Melde and her foster-daughter.

Touching the assault, the foster-daughter of Mrs. Melde testified, in substance, as follows: Mrs. Melde told appellant that she would pay the bill as soon as appellant paid her the $60 he owed. Upon being advised by appellant that he had paid the money to her agent, Mrs. Melde started

to pay appellant's bill. Appellant began to curse and abuse Mrs. Melde, calling her a whore, and other vile names. He called the son of Mrs. Melde a s— of a b—, and approaching the injured party, he threatened to strike her. When appellant cursed Mrs. Melde she attacked him, striking him several times with her fist. Whereupon, appellant pulled a pistol and struck Mrs. Melde several blows on the head. Appellant left the scene of the difficulty and returned to his home.

Appellant, testifying in his own behalf, denied that he struck Mrs. Melde with a pistol and declared that he had no pistol on his person at the time. He said that the injured party attacked him with a knife, and that in order to protect himself and prevent her from injuring him, he struck her a light blow with a pocket knife. Further, he denied that he cursed Mrs. Melde or her son. He testified that he had no intention of injuring Mrs. Melde. At this point we quote appellant's testimony as follows:

"At that time I did not know of any ill-will or ill-feeling toward me on the part of any of the Melde family. On that occasion I went around the house, as usual, and walked upon a little back porch and knocked on the kitchen door; Mrs. Melde herself opened the door and told me to come in and I did; she told me to go in the bed room right adjoining that room and I went in; there was a chair setting in there and I started toward the chair and Mrs. Melde followed me; she walked down to the right. There was a door leading out the front of the house; the house faces near North and she was down on the right side of me, and when I turned around she said 'What do you want' in a sort of hoarse way, and I said 'Mrs. Melde I have a little water bill here if you want it' and she said 'I will pay you when you pay me', and I told her 'Why, Mrs. Melde, I give Colonel that money this morning, and as far as your bill is concerned you need not bother, because I never did bother you about the water bill and I don't care if you don't pay it until the end of the year'; she said no more about the water, but said 'You have been trying to send my boy to the penitentiary' and I said 'your boy, I never did anything to you people in my life except benefit you' and I said 'Mrs. Melde, if anybody told you that I tried to send your boy to the penitentiary, they just told you a lie', and that is about all I had time to say because she jumped onto me with that. She struck me the first lick right along here (indicating the cheek) and I attempted to sling her back and did sling her arm back, but she was a heavy woman and I did not sling her very far, and by that time Mary was on me hitting me. Mrs. Melde hit me on the right cheek and back (indicating) and I pushed them back a time or two, but I did not last long because Mrs. Melde rushed in and struck at me again and pushed me back, and I pushed her back and she come in and struck me here (indicating face) and I felt something touch me across there. That was across the left

side of the face, my jaw, and when I saw that knife in her hand I got my hand in my pocket and got out my knife and hit her on top of the head; I hope God will paralyze me if I hit her any other lick; if I did intentionally, and I do not believe I did unintentionally. She then sorter staggered back and looked up at me and turned and went out of the house, and I just said to Mary 'Don't come any closer to me' and Mary followed her out of the house and as she got to the steps I went on by them and as I started off I said 'I am sorry this happened, but feel like you brought it on yourself and I never did anything but try to benefit you in my life' and I walked on off. I went home. I did not want to hit her the first time; I hit her because I know she tried to hurt me and would have hurt me with that knife, and I hit her to get loose and get out of there."

Appellant received some scratches. According to his testimony, Mrs. Melde's blows bruised his face and body. A physician, who testified for the state, said that he examined Mrs. Melde. He said: "At that time she had two wounds, one on the scalp and cheek that were visible and were found from my examination. At that time I would class those wounds as minor wounds; at that time there was nothing apparently serious about either wound except the probability of infection. There is a probability of any character of wound becoming infected." Approximately a week after the difficulty one of the wounds became infected, and, thirteen days after the assault, Mrs. Melde died.

The jury reached the conclusion that the wounds inflicted by appellant were not the proximate cause of Mrs. Melde's death.

The court charged on provoking the difficulty as follows: "If you believe from the evidence, beyond a reasonable doubt, that at the time of the difficulty the defendant did some act or acts or used some language, or did both, with an unlawful and wilful intention of producing an occasion to bring on a difficulty and to kill or inflict serious bodily injury upon the deceased, or offer violence to her person and that such act or acts or language, or both, if any such there were of the defendant, were reasonably calculated under the circumstances at the time, to provoke a difficulty with the deceased, and after such act or acts or language or both, if any, there was of the defendant, caused the deceased either alone or jointly with Mary Melde, to attack the defendant with her hands or with a knife or make other hostile demonstration toward him showing within itself or by words accompanying it, an immediate intention to kill or inflict serious bodily injury or do violence to the person of the defendant, as viewed solely from his standpoint at the time, and the defendant in pursuance of his original unlawful and wilful intention, if any, to kill or inflict upon the deceased serious bodily injury, if any such intention the defendant had, did make an assault upon the deceased with a deadly weapon or with his hands or fists in order to save his own life or him-

self from serious bodily injury, or from violence to his person, then if you so find you are instructed that the defendant's plea of self-defense will not avail him, and the offense, if any, would be murder, assault with intent to murder or aggravated assault, and if you so find from the evidence, beyond a reasonable doubt, you will find the defendant guilty of murder, or assault with intent to murder or aggravated assault, and indicate by your verdict which offense, if any, and assess his punishment as prescribed in this charge; and in the event you have a reasonable doubt as to the grade of offense, if any, defendant is guilty of, if in fact you find him guilty, then you shall give him the benefit of the doubt and find him guilty of no higher grade of offense than aggravated assault."

The foregoing charge furnished no guide for determining the conditions under which, on a charge of assault with intent to murder, appellant might have been guilty of no more than an aggravated assault, notwithstanding the issue of provoking the difficulty was in the case. Under the court's charge the jury were warranted in finding appellant guilty of assault with intent to murder if he provoked the difficulty with no intention to kill the injured party, or seriously injuring her. With the issue of provoking the difficulty in the case, in considering whether appellant was guilty of assault with intent to murder or aggravated assault, it was necessary that the jury understand that if appellant's statement that he did not intend to kill or seriously injure Mrs. Melde was to be accepted as true he would be guilty of no greater offense than an aggravated assault. On this question there was nothing in the charge for the guidance of the jury. We quote from Thompson v. State, 85 Texas Crim. Rep., 144, 210 S. W., 800, as follows: "If upon another trial the law of provoking the difficulty is submitted, it should embody not only the theory of provocation with intent to kill or seriously injure, but the jury should be told in appropriate language that, if the appellant provoked the difficulty with the intent to injure the deceased, but with no intent to kill him or do him serious bodily harm, and afterwards fired upon him for the protection of his own life against a threatened assault from the deceased, his conviction could not be for a higher grade of offense than aggravated assault."

Any intention of holding that the language used in Thompson v. State, supra, is applicable except in a prosecution for assault with intent to murder, when the issue of provoking the difficulty is in the case, is disclaimed. In Thompson's case the conviction was for assault with intent to murder under an indictment charging murder.

While appellant's exception to the charge in question is not as specific as it might have been, when considered in connection with the charge, we deem it sufficient to have apprised the trial court of the vice of which complaint is made.

Paragraph 11 of the court's charge embodies an instruction covering

the law of self-defense. This charge appears to be related to the charge covering murder. The court advised the jury that if in acting under a reasonable expectation or fear of death or serious bodily injury at the hands of deceased, appellant struck deceased and killed her as charged in the indictment, he should be acquitted. In submitting the law of assault with intent to murder the court instructed the jury, in substance, that if they believed beyond a reasonable doubt that appellant assaulted deceased with malice aforethought with intent to murder, and not in self-defense, to find him guilty of assault to murder. As related to assault with intent to murder, no further mention of self-defense was made. If the jury referred to paragraph 11 of the charge for an application of the law of self-defense to the facts, they found that under the instruction therein contained that they could not acquit appellant, under the law of self-defense, unless they believed that he killed deceased by striking her with a pistol or knife, etc. Bearing in mind that the court predicated the charge covering the law of assault with intent to murder on testimony to the effect that the wounds were not the proximate cause of deceased's death, it is apparent that the charge on self-defense contained in paragraph 11 would furnish no adequate guide for determining whether appellant acted in self-defense when the state sought to hold him on a charge of assault with intent to murder. The jury would probably conclude from reading the charge on self-defense that if the wounds were the proximate cause of Mrs. Melde's death, appellant would be excusable if he acted in self-defense, but otherwise if the wounds were not the proximate cause of her death and that in the latter event the fact that he acted in self-defense would not preclude his conviction for assault with intent to murder. In short, the charge on self-defense, as applicable to murder, was so drawn as to be inapplicable to assault with intent to murder. Considering the charge in its entirety, the opinion is expressed that no adequate instruction on the law of self-defense as applied to assault with intent to murder was embodied therein. Hence appellant's objection to the charge for its failure to give an instruction covering the law of self-defense in connection with assault with intent to murder was well taken.

In the first part of the charge on self-defense the court instructed the jury, in substance, that if they believed from the evidence that deceased, either alone or in connection with Mary Melde, or both or each of said parties acting jointly, made or was making an attack real or apparent on appellant, etc., which, from its manner and character * * * caused appellant, viewing the same from his standpoint at the time, to have a reasonable expectation or fear of death or serious bodily injury at the hands of deceased and Mary Melde or either of them, and that acting under such reasonable expectation or fear of death or serious bodily injury *at the hands of deceased* appellant did strike, etc., and kill Mrs. Melde, he should be acquitted. Appellant objected to the charge on the ground

that it in effect restricted his right to defend against an attack by Mrs. Melde and did not give him the right to defend against an attack at the hands of Mary Melde and Mrs. Melde jointly and separately. The italicized portion of the charge required that appellant act under a reasonable expectation or fear of death or serious bodily injury at the hands of deceased alone before he was entitled to defend himself. Appellant's testimony raised the issue of a joint attack by Mrs. Louise Melde and Mary Melde. The court should have responded to the exception and amended the charge.

In the event of another trial, if for assault to murder, attention is called to changes by recent laws in the law of assault to murder.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.