No. 2738.

ED CROWELL v. THE STATE.

1. THEFT—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—The *factum probandum* of theft, as that offense is defined by our statute, is the *taking* of the property. If the *taking*, being the main fact in issue, is not directly attested by an eye witness, but is proved as a matter of *inference* from other facts in evidence, the case rests wholly upon circumstantial evidence, and the failure of the trial court to give in charge to the jury the law of circumstantial evidence is material error. See this case in illustration.

2. SAME—CORPUS DELICTI—ACCOMPLICE TESTIMONY—FACT CASE.—The *corpus delicti* of theft can not be established by the uncorroborated testimony of an accomplice, but upon that issue the accomplice must be corroborated by other evidence tending to show the commission of the offense, and the defendant's connection with the commission of the same. It will not suffice to corroborate such testimony only to the extent of connecting the defendant with the commission of an act alleged to be an offense. In this case the ownership of an animal alleged in the indictment was proved only by the uncorroborated testimony of the accomplice. *Held*, insufficient on the issue of ownership, and, therefore, insufficient to support the conviction.

3. SAME—CHARGE OF THE COURT.—See the statement of the case for a charge of the court upon accomplice testimony *held* erroneous, because it applies the law too broadly to the facts of the case, and does not, as it should, require the corroboration of the accomplice to be as to facts tending to show the commission of an offense, and the defendant's connection with such commission.

4. SAME—The charge in this case is otherwise erroneous in that it instructs the jury that the *killing* of the animal constituted the offense, whereas the *taking* (if any) of the animal constituted the offense. Moreover, the facts demanded that the charge should submit to the jury whether the witness M. was an accomplice, and in omitting to do so, and in refusing the defendant's requested instruction upon the subject, the trial court erred.

5. BRANDS—EVIDENCE.—A brand, although recorded after the commission of the offense, is admissible in evidence, but is not sufficient to prove ownership.

6. SAME.—A "road brand," as distinguished from a "range brand," is a brand required by statute to be placed upon cattle before being removed from the county in which they are gathered to market outside of the State, which brand must be recorded in the county from which the cattle are to be driven, and before their removal from such county. The brand introduced in evidence in this case was the "road brand" of the alleged owner which was recorded *after* the cattle were driven from the county

where gathered, and after the commission of the offense. *Held*, that the said brand was inadmissible to prove ownership, and should have been excluded.

APPEAL from the District Court of Limestone.    Tried below before the Hon. Sam. R. Frost.

The conviction in this case was for the theft of one head of cattle, in Limestone county, Texas, on the twentieth day of June, 1886.    The animal was alleged in the indictment to belong to D. W. Carrington.    The penalty assessed was a term of three years in the penitentiary.

Bill Moss was the first witness for the State.    He testified that the defendant was his brother-in-law, and lived with him at his house, in Limestone county, in June and July, 1886.    Late in the first, or early in the last mentioned month, the defendant, at the family dinner table, told witness that he was going to kill a beef on that day, and asked if witness wanted any of the meat.    Witness replied that he did, and agreed to pay for it, stipulating no price, by crediting the defendant's indebtedness to him for board.    Some of the meat was brought to witness's house and was there used, except a small portion which spoiled and was thrown away.    Witness left home after dinner, and did not see the killing of the animal, nor did he see the animal before it was killed, nor any part of it after it was killed, except the meat brought to his house.    Witness at no time refused to take any of the beef, nor did he tell Mr. Foy that he did refuse it because he wanted to have nothing to do with such beef.    He did not tell Foy that defendant had the beef tied in a dugout, and that he refused to help defendant kill it, and told defendant to release it.    He only told Foy that part of the meat he got from defendant spoiled, and that he had to throw it away.    Defendant said that he was going to kill his own beef.

Henry Foy testified, for the State, that on the morning of the alleged offense, the defendant came to the house of witness's father, called witness to the gate, and told witness that he wanted him to go and help him, defendant, kill a beef.    Witness went with him to the open wood near Bill Moss's house, where he found a red two-year-old beef steer tied to a tree.    That animal, as near as witness could decipher the brand, was branded N-N on the side.    The brand, however, may have been something else very similar to N-N.    The defendant killed the steer

by striking it on the head with an ax. He said that the animal belonged to him. Witness helped to skin, clean and butcher the beef, and afterwards to bury the hide, head, feet and entrails. Witness asked defendant why he buried those parts, but defendant made no reply except that the yearling was his. Three-quarters of the beef were taken to Bill Moss's house, and witness took the other quarter to his father's house. On the way to Moss's from the place of the killing, the defendant asked the witness to say nothing about the killing of the beef or the disposition made of the refuse parts. He then remarked: "If Jim Davis knew about this he would rave." Witness then asked him if the beef belonged to Jim Davis, but defendant did not reply. Witness did not know who owned the animal killed by defendant.

Cross examined, this witness said that he was not quite seventeen years old when the animal was killed by defendant. The witness was not testifying upon the promise of any one to secure his exemption from prosecution for complicity in this offense. He had probably spoken of the case to several parties, but had not discussed the testimony with any one. His father had directed him to tell only the truth about the whole transaction. Witness thought that the defendant owned the animal until after it was slain, when the preparations for the burial of the offal, head, hide and feet were made. Witness helped dig one of the holes in which the said parts were buried. When he got home witness told his father that the defendant had killed a beef which he, witness, did not believe belonged to the defendant. Witness had not been threatened with prosecution in the event he refused to testify in this case. He had been questioned about the case since he was before the grand jury, and he answered the parties. He talked once or twice with Charley Haley about the case, but never to John Lewis. Defendant's brand was 3 diamond c. Witness had never seen a brand of the defendant called a "rolling m." Witness did not tell Babe Parsons that he did not think the brand on the animal was defendant's brand, nor did he tell John Lewis that he thought the brand was W–W. He did not tell Charley Haley that the brand on the animal might have been a "rolling m." Witness was frightened when before the grand jury, never having had that experience before. When the defendant came to get witness to help him kill the beef, he asked witness's father if he did not want some of the beef. Witness's father replied that he had no

money to pay for it.   Defendant replied :   "That is all right; if you will let Henry go with me and help skin and butcher it, I will give you one-quarter."

Re-examined, the witness said that he did not know much about Babe Parsons, John Lewis and Charley Haley, except that they were the intimate associates of the defendant.   They and defendant were together when witness came out of the grand jury room.   At that time defendant asked witness what he told in the grand jury room.   Witness replied that he had to tell the truth.   Defendant said in reply:   " It will learn me not to monkey with children."   Witness told Haley that, besides the N–N brand, there was a scar on the animal's hip.   Witness was afraid of Parsons, Lewis and Haley, but had never heard of them doing violence to any one.

Bill Moss, recalled for the State, testified that he was a witness before the grand jury which found this indictment.   He had a talk with Mr. Alsop, on the road to Kosse, but did not tell Alsop that he saw the beef and hide.   The witness saw the place where the beef was killed, which was on the bank of a branch in the field, and about one hundred yards from the house.   This was two days after the beef was killed.   The ground showed that something had been covered up, but there were no parts of a beef or hide to be seen.   There was a little dry blood on the grass. Defendant, after the killing, told witness that he did not bury the head, hide and entrails of the beef.   Witness, talking to him about the beef killed, asked him if he had done anything wrong. He replied:   "I have killed a beef of my own."   He did not say what he did with the refuse parts.   Witness did not talk to Henry Foy about the case until after he, Henry Foy, had been before the grand jury.   Witness was before the grand jury on the same day.   He did not remember whether he talked first to Henry Foy or to Alsop.   He had never talked with anyone who claimed to have seen the N–N brand on the yearling, but Henry Foy.   Defendant never told the witness the brand of the animal he killed.   The wife of the witness pointed out to witness the place of the killing, and the witness, seeing no offal at that place, asked the defendant about the matter.   Defendant merely replied that he killed the beef; that it was his own beef, and that he did not bury the offal.

B. F. Foy testified, for the State, that he was the father of Henry Foy.   Defendant came to witness's house in June, 1886, and asked witness if he did not want some beef.   Witness told

him that he had no money with which to pay for it. Defendant replied that he would give witness a quarter if he would send his son Henry with him to help butcher the animal. Witness sent his son with defendant, and his son brought a quarter of beef home with him.

W. F. Foy, a son of the last witness, and the brother of Henry Foy, testified, for the State, that some time after this prosecution was instituted, he met the defendant in the "bottom," and defendant told him that he would beat this case; that the yearling was his, and that he could prove the fact by Babe Parsons. Witness had seen the N–N brand on the range. A man from Leon county drove a bunch of cattle in that brand through the neighborhood, and several head of the animals dropped out of the drove. Witness had seen as many as three different animals in that brand on the range.

Sam Alsop testified, for the State, as did the witness W. F. Foy, in regard to the N–N brand, except that he had seen as many as six animals in that brand on the range.

The State here introduced the record of brands of Limestone county, which showed record of the N–N brand in the name of D. W. Carrington, on the sixteenth day of April, 1887. The said D. W. Carrington then testified, for the State, that he lived at Marquez, in Leon county. Early in May, 1886, the witness drove a bunch of cattle from Leon county to Bremond, in Robertson county, for the purpose of shipping them to market. The herd comprised one and two year old beef steers. Witness lost twenty-two head of those animals in Limestone county, between Kosse and Bremond. Some fourteen head of those cattle were eventually recovered by the witness. The animals lost were all in the witness's "road brand," N–N, and most of them had other brands as well. Witness talked to George Lewis and others about getting his cattle for him, and may have given the said Lewis authority to sell. It was the recollection of the witness that he had his said road brand recorded in Leon county. If so, it was recorded before he left the county.

The charge of the court upon accomplice testimony, referred to in the third head note of this report, reads as follows: "The law provides that a conviction for crime can not be had upon the testimony of an accomplice, unless such testimony is corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of an offense. An accomplice,

within the meaning of the foregoing provision of law, is any one who participates or aids, advises or encourages another in the commission of an offense, or, being present, agrees to the commission of an offense. An accomplice is not an incompetent witness, but a conviction for crime can not be had on the testimony of an accomplice alone, but may be had when there is evidence corroborating the testimony of an accomplice (and whether there is such corroborating evidence is for the jury to determine), provided such corroborating testimony tends to connect the defendant with the offense committed. The corroborating testimony, to be sufficient, must not merely show that the offense was committed, but must show that the defendant committed the offense, or knowingly and purposely assisted in the commission of the offense. Hence it follows that the defendant can not be convicted of the criminal charge against him upon the testimony of Henry Foy alone. But, if you find that the facts testified to by the witness Henry Foy, and all other facts and circumstances in evidence which corroborate him, if any, do corroborate his testimony, establish beyond a reasonable doubt the conclusion that the defendant did kill a steer, the property of D. W. Carrington, without the consent of the owner, and appropriated the same to his own use, under such circumstances as constitute theft of the animal, he is guilty, and you should so say."

The motion for new trial raised the questions discussed in the opinion.

*Burrow & Kincaid,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. A fraudulent *taking* of property without the consent of the owner, with the intent to deprive the owner of the value of the property, and appropriate it to the use and benefit of the person taking it, constitutes the offense of theft. Such a *taking* of the property completes the offense. The *factum probandum,* therefore, is such *taking.* It is the main fact in issue. Where the main fact in issue is not directly attested by any eye witness, but is proven as a matter of *inference* from other facts in evidence, the case rests wholly upon circumstantial evidence. (1 Greenl. Ev., secs. 13–13*d.*; Burrell's Cir. Ev., 4 *et seq.;* Eckert v. The State, 9 Texas Ct. App., 105.)

In this case the evidence shows that, before the alleged stolen animal was killed by the defendant, and before he is shown to have had any possession thereof, or connection therewith, it had been taken from its accustomed range, carried into the field of one Moss, and there tied to a tree. It is evident, therefore, that the theft of the animal by some person had been completed at the time defendant was first seen to have possession of it. But no witness testified to having seen the *taking* of the animal from its range. The fact of such taking is only proved as a matter of inference from other facts in evidence. It is only proved circumstantially, and the case is therefore one resting wholly upon circumstantial evidence. This being the character of the case, it was material error to omit to charge the jury upon the rules relating to circumstantial evidence. We do not think the statements made by the defendant in regard to the animal killed by him can be regarded as confessions proving that he took the animal from its range, or, in other words, proving that he committed the original theft of the animal. They may have the effect to connect him with the animal after it had been tied to the tree in Moss's field, and thus connect him inferentially with the original taking, but they do not afford direct evidence of the original taking, and make this a case not wholly dependent upon circumstantial evidence.

There is no evidence proving the corpus delicti of the alleged theft, except the testimony of an accomplice. He alone saw the animal that was killed and appropriated by the defendant. He alone saw the brand upon said animal. As to this portion of his testimony there is no corroborating evidence. It is only from the testimony of this accomplice that we are informed that the animal killed by the defendant was one of Carrington's cattle, and not the defendant's own property. Can such testimony support a conviction? We think not. Our view of the statute relating to accomplice testimony is that where the corpus delicti of the offense is proved alone by accomplice testimony, such testimony must be corroborated by other evidence tending to establish a commission of the offense, and the defendant's connection with the commission of the same. It will not suffice to corroborate such testimony to the extent only of connecting the defendant with the commission of an act alleged to be an offense. It must be proved that the act committed was an offense, and when this proof is made by an accomplice his testimony must be corroborated.

In the case before us the offense alleged was the theft of an animal, the property of one Carrington. It was just as essential for the prosecution to prove that the animal taken was the property of Carrington as that it was taken by the defendant. There was ample evidence to prove, and, in fact, it was not denied by the defendant that he took an animal and appropriated it. But the ownership of the animal taken was a vital issue upon which depended the guilt or the innocence of this defendant. There was not a particle of evidence establishing the allegation that the animal killed by the defendant was the property of Carrington, except the uncorroborated testimony of the accomplice witness. We hold, therefore, that the evidence is insufficient to support the conviction. (Code Crim. Proc., art. 741; Coleman v. The State, 44 Texas, 109; Davis v. The State, 2 Texas Ct. App., 588.)

We are of the opinion that the charge of the court in the particulars excepted to was erroneous. That portion of the charge relating to accomplice testimony which applies the law to the facts of the case, is too broad in its scope. It should have required the corroboration to be as to facts tending to show the commission of an offense, and the defendant's connection with such commission. The charge was also erroneous in instructing that it was the *killing* of the animal that constituted the offense. It was the *taking* of the animal while on its accustomed range, and not the *killing* of it after it had been *taken*, that constituted the theft of the animal. We furthermore think that the court should have submitted the question to the jury as to whether the witness Moss was an accomplice by proper instruction, such as was requested by counsel for defendant.

With regard to the record of brands, while admissible in evidence although recorded after the commission of the alleged offense, they are not sufficient evidence to prove ownership. It further appears, with reference to the brand in this case, that it was a "road brand," and not a range brand. A "road brand" is provided for by article 4632 of the Revised Statutes, and is required to be placed upon cattle before being removed from the county where the same are gathered to market beyond the limits of this State, and said brand is required to be recorded in the county from which the animals are to be driven, and before their removal from such county. This statute is not operative in certain named counties, the county in which this prosecution is conducted being exempted now from its operation (act March 21,

1887, 34); but it does not appear to have been so exempted at the time of the commission of the alleged offense. (Act April 12, 1883, p. 79.) It seems to us that the record of the "road brand" of Carrington, made *after* his cattle were driven from the county where gathered, and after the commission of the alleged offense, was unauthorized by law, and that said record was not only insufficient, but was inadmissible evidence to prove ownership.

Because of the errors discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered December 10, 1887.