Opinion delivered April 10, 1889.

## No. 6253.

### John Williams v. The State.

1. **Practice—Principal Offender and Accessory.**—Under the provisions of article 90 of the Penal Code, the principal offender, if in arrest, must be tried before his accessory can be tried; wherefore the motion of the defendant (who was charged as a principal), that the person charged as his accessory be first put upon trial was correctly overruled.

2. **Same—Theft—Evidence.**—Over the objection of the defendant the State was permitted to introduce in evidence a bill of sale, conveying the alleged stolen horses to the defendant, which bill of sale was found in and taken from the possession of the defendant after his arrest. *Held*, that said bill of sale was properly admitted, in view of the proof showing that it was fabricated by the defendant. It was no objection to said evidence that it was taken from the defendant after his arrest and without authority of law.

3. **Same.—As a Standard of Comparison** whereby to identify the handwriting in the bill of sale as that of the defendant, the State was permitted to introduce in evidence the authenticated signatures of the defendant to application for continuance, etc., in this case. *Held* correct.

4. **Theft—Transportation of Stolen Property into this State—Principal Offender—Charge of the Court.**—See statement of the case for a special instruction, given in charge to the jury, at the instance of the State, *held* correct.

5. **Same.**—It is the province of the court, in cases involving the construction of the laws of another State or country, to construe such laws, and determine when such laws have been established in evidence. In this case the charge left that question,—involving the laws of New Mexico as to theft,—to the jury, whereas it should have explained to the jury the purport of that law, and instructed them that it had been proved. The error, however, is not reversible error, as it was favorable to the defense.

6. Theft—Fact Case.—See statement of the case for evidence *held* sufficient to support a conviction for horse theft.

Appeal from the District Court of Wilbarger. Tried below before the Hon. P. M. Stine.

The conviction in this case was had under an indictment which charged the appellant with the theft of two horses, the property of Henry Heineke, in Wilbarger. county, Texas, on the thirtieth day of November, 1887. The penalty assessed by the verdict was a term of ten years in the penitentiary.

Henry Heineke was the first witness for the State. He testified, in substance, that he lived on his ranch in San Miguel county, in the Territory of New Mexico, about thirty-five miles west from Las Vegas. Two horses, the property of the witness, were stolen from the said ranch on the night of September 15, 1887. Both were dun colored animals, one having dark colored mane and tail and the other light colored mane and tail. They were branded alike on the left side of the neck—the brand being three upright strokes crossed with a horizontal bar through the middle, making a double H connected. The said brands were exactly two by two inches in size. The said horses were taken from the witness's home pasture, which adjoined his house, without his knowledge or consent. They were in good condition when taken. Witness next saw the said horses in January, 1888, when Mauricio Lucero, whom he sent to Texas, brought them back to the said ranch, at which time they were in a very reduced condition. The brands described had been changed into peculiar characters, different on each horse, and the same characters were counter branded on the hip. In August or September, 1887, the witness saw a young man on the streets of Las Vegas, which young man he verily believes he identifies in the defendant.

Mauricio Lucero testified, for the State, that at present and in August and September, 1887, he lived with and was in the employ of Henry Heineke, on the latter's ranch in San Miguel county, New Mexico. He testified substantially as did Heineke about the theft of the horses, and described them as Heineke did. The witness found the said horses in the possession of John L. Hammond in. Vernon, Wilbarger county, Texas, about January 1, 1888, whence he took them to Heineke's ranch in San Miguel county, New Mexico.

George Conger testified, for the State, that he lived in Tom Green county, Texas, and from August to November, 1887, worked on the ranch of the Texas Capitol Syndicate. He was at the "Sod House" in Lamb county in September, 1887. During the latter part of that month the defendant, giving his name as Lon Saunders, in company with a short heavy set man, came to the "Sod House" and stayed all night. They had in their possession two dun horses corresponding with the horses described by the preceding witnesses. On the next morning the defendant and his companion, with the said horses,. left the Sod House. going in the direction of Jim Newman's camp. A few days later the defendant, having the said horses still in his possession, came back to the Sod House. On or about the tenth day of the following November the witness saw the defendant and John West together in the Yellowhouse canyon. They had in their possession a bunch of eight or ten horses, including the two dun animals above described. Defendant and West remained in that vicinity two or three days, when they left, defendant saying that they were going north. Tascosa was north of Yellowhouse canyon, and Vernon was east.

Ed. Chapman testified, for the State, that in the fall and winter of 1887 he was in the employ of Jim Newman and lived on the plains in Lamb, Bailey and Lubbock counties. In September, 1887, the defendant, answering to "Lon" as his given name, and a short heavy set, dark complected man called Howard, came to Jim Newman's camp. They had in their possession two dun horses, one with dark and other with light mane and tail, and both branded on the left side of the neck. Two days later witness saw the same horses at the camp of one Mc-Murray, at which time the brands on the neck of each of the horses had been changed, and other brands put on the left hip of each. About a month later the defendant and John West, having the same two horses and eight or ten others, came to Newman's camp, remained over night and left. When witness first saw defendant in possession of the said horses he asked defendant what he gave for them, and defendant replied: "One hundred dollars."

Gilbert Catrell testified, for the State, that he was in the Yellowhouse canyon, in Lubbock county, in the month of October, 1887, and while there saw the defendant and John West in possession of a small bunch of horses, including the two dun animals described by previous witnesses.

W. M. Lay testified, for the State, as did the witness Catrell, about seeing defendant and West in the Yellowhouse canyon with the two said horses. He stated also that late in September he saw the defendant and one Howard, in Lubbock county, in possession of the two horses. He did not then notice the brands. He afterwards (and before he saw defendant and West in the Yellowhouse canyon) saw defendant with the said horses at Howell's place, in Bailey county, at which time the original brands had been changed.

Sid Boykin testified, for the State, that, on the twenty-sixth day of September, 1887, he saw the defendant at Salt Lake, in New Mexico, in company with a short, heavy set man, and in possession of the two dun horses described by the preceding witnesses. About a month later witness saw defendant in Texas with the same two horses.

John L. Hammond testified, for the State, that on or about November 20, 1887, he and one John Pell arrested the defendant and John West in Wilbarger county, Texas, and took from their possession the two dun horses mentioned in the indictment, and described by preceding witnesses. After putting them in jail witness searched them, and on the person of one or the other he found the bill of sale now introduced in evidence by the State, which said bill of sale purports to have been executed on the twelfth day of September, 1887, by one Richard Howard, and to be attested by one Jules Hedrick as a subscribing witness. It purports to convey to defendant, among others, the horses mentioned in the indictment. Witness kept the said horses about two months, when he delivered them to Mauricio Lucero, who claimed them as the property of Henry Heineke.

Deputy district clerk John Brown, introduced by the State, produced an application for continuance, and another for attachments, and testified that the name "John Williams" was signed to each by the defendant in his, witness's, presence.

Jules Hedrick was the next witness introduced by the State. He testified that he lived near Las Vegas in New Mexico, and had known the defendant about two years. Examining the bill of sale in evidence, the witness declared that he had never seen it before, and that his name appearing on the same as an attesting witness was a forgery. He then qualified himself as a handwriting expert, and compared the handwriting in the bill of sale with the signature of the defendant to the applica-

tion for continuance and attachments. As an expert he then declared that the signatures "John Williams" to the said application, and the signature "Richard Howard" and "Jules Hedrick" to the bill of sale were written by one and the same hand.

The State closed by introducing in evidence sections 68, 69 and 70 of Chapter 1, Title 77, of the Laws of New Mexico, which, in defining the offense of theft of live stock, comprehends the elements of that offense as defined by the statutes of this State.

Bennett Howell was the one witness for the defense. He testified that he lived in Lamb county, Texas. Defendant came to witness's ranch in the fall of 1887. A few days before that a man who gave his name as Howard, having in his possession the two horses mentioned in the indictment, stopped at witness's house, tried to sell to witness the horses, and then went on, inquiring the way to Newman's ranch. Witness told defendant about Howard's visit, and remarked that if defendant would buy the horses, he, witness, would give him, defendant, a good trade for them. Defendant left for the purpose of finding Howard. A few days later he returned with the horses, but he and witness did not agree on terms of a trade.

The special charge of the court, referred to in the fourth headnote of this report, reads as follows: "All persons are principles who act together in the commission of an offense. If, therefore, you believe from the evidence beyond a reasonable doubt that the defendant, together with some other person, fraudulently took the horses in controversy in the Territory of New Mexico, as alleged in the first count of the indictment, from the possession of Henry Heineke, without said Heineke's consent, with intent to deprive the owner of the value of the same, and to appropriate it to their own use and benefit, and that said property was the property of said Heineke, and that said act constituted, by the laws of Mexico then in force, the offense of theft, and that defendant afterwards brought the same property into Wilbarger county, Texas, you will find defendant guilty."

No brief on file for appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for the theft of two horses. The horses were stolen by defendant in New Mexico, and brought by him into Wilbarger county, Texas. Numerous errors are assigned by defendant, but we have not been aided in considering them by a brief or argument in support of them. We will determine them, however, in the light of such investigation and thought as we have been able to give them.

It was not error to refuse the defendant's motion to put John West upon trial before trying the defendant. Said West was indicted as an accessory to the theft charged against the defendant, and it is expressly provided that where "the principal is arrested he shall be first tried." (Penal Code, art. 90.) The defendant being the principal, and under arrest, it was not only proper but obligatory upon the court to try him first. This requirement of the statute is special and controls the general provision relating to the severance on trial of defendants. (Code Crim. Proc., art. 669a.)

It was not error to admit in evidence, against the defendant, the bill of sale found in his possession, or in the possession of the party with him. This bill of sale described the stolen horses, and was manufactured, as the evidence shows, by the defendant. That it was taken from the possession of the defendant while he was under arrest, and without authority of law, did not render it inadmissible evidence against him.

It was not error to permit the State to introduce in evidence the signatures of the defendant to his application for a continuance and applications for attachments. These signatures were proved to be genuine, and were introduced for the purpose of comparing them with the handwriting of the said bill of sale, to show that the defendant wrote said bill of sale. The applications were not read in evidence, and the introduction in evidence of the signatures thereto did not violate the rule which excludes a confession of a defendant made while in jail or other place of confinement.

Several objections are made to the charge of the court, and to the refusal of the court to give instructions requested by the defendant. We will not discuss these objections in detail. We think the charge contains a full, fair and correct exposition of the law applicable to the facts of the case, and embraces substantially, to the extent demanded by the evidence, the instructions requested by the defendant. The instruction given at the instance of the State is, in our opinion, correct, as was inti-

mated by this court in Fernandez v. The State, 25 Texas Ct. App., 538, where the precise question was discussed but not determined.

We have found but one error in the charge of the court. It submitted to the jury the question of the law of New Mexico with respect to theft. This question was for the court and not the jury to determine, and the charge should have instructed the jury that the law of New Mexico, as to theft, had been proved, and the purport of that law. This error, however, was favorable to the defendant, and he has not and could not complain of it. We notice it only for the purpose of calling the attention of trial judges to the rule that it is the province of the court to determine when the laws of another State or country have been established in evidence, and to construe such laws. These are matters of law and should not be submitted to the jury.

As to the sufficiency of the evidence to support the conviction, there is no doubt in our minds. It is circumstantial, but of the most cogent character, and the jury could not reasonably, we think, have found the defendant not guilty. The judgment is affirmed.

*Affirmed.*