CLINT BELL v. THE STATE.

No. 8198. Delivered Oct. 15, 1924.

Rehearing denied Jan. 28, 1925.

**1.—Theft of Cattle—Witnesses—''Experts''—Who are.**

Appellant complains of the testimony of A. L. Harrison in the comparison of the signature of appellant to a document signed by him in the grand jury room and one offered in evidence by the state. We think that Mr. Harrison qualified himself to testify as an expert. It is well settled that a bank cashier or teller, who has had experience in examining signatures from comparison may give his opinion as to a disputed writing or signature. A man may be an expert, by reason of his experience and learning, although he may not consider himself one.

**2.—Same—Grand Jury—Testimony Before—When Divulged.**

Appellant objects to the use of the signature made by him in the grand jury room on the ground that the use of same compels him to give evidence against himself. We do not agree to this position. The bill does not disclose the subject under investigation before the grand jury when appellant made and signed the statement. So far as we are advised it may have had no reference whatever to the present charge against him. Nor can we agree that mere proof of appellants signature, executed in the grand jury room, violates the statute which inhibits divulging the secrets of that body.

**3.—Same—Bills of Exception—Must be Complete.**

Appellant complains of the identification of the name, Tulia, Texas, and the introduction of the letter containing this name. Neither the envelope,

nor the letter are set out in the bill and for that reason, it is incomplete, and fails to furnish us with sufficient information upon which we can base any proper ruling. When complaint is made to the admission of evidence, a bill of exception attempting to preserve the point is defective, if it fails to set out the admitted evidence.

#### 4.—Same—Charge of Court—Objections to—Special Charges.

Any complaint to the main charge of the court, either of commission or omission, must be specifically pointed out in the objections, and the matter complained of clearly indicated to the court. The request of a special instruction, which the trial court, could legitimately consider as a substantial repetition of his main charge, cannot take the place of an objection which should pertinently point out the matter complained of. Art. 735 Vernons C. C. P. requires an objection to the charge to be in writing and "distinctly specifying each ground of the objection."

#### 5.—Same—Charge of Court—Accomplice Testimony.

The court should not instruct the jury as a matter of law, that a witness is an accomplice, unless such fact is clearly established. Where the testimony only shows guilty knowledge of an offense, but not actual participation in the offense, in some degree, the issue as to whether such witness was or was not an accomplice should be submitted to the jury and they to decide the question, and not the court.

#### 6.—Same—Charge of Court—On Accomplice.

There is no evidence in this record to show that Mrs. McGuyer was an accomplice. Outside of the fact that she may have suspicioned or known that the animal was stolen, there is nothing in the record to show that she had anything to do with it, whatever. The court properly refused to charge that she was an accomplice.

#### 7.—Same—Charge of Court—Accomplice.

It not having been shown that McGuyer was an accomplice, and other evidence of appellant's guilt having been introduced, the court was not in error in refusing a special charge requested by appellant that if there was no evidence in the case, other than that of Smith and McGuyer, tending to connect accused with the original taking of the animal, to acquit him.

Appeal from the District Court of Swisher County. Tried below before the Hon. R. C. Joiner, Judge.

Appeal from a conviction of theft of one head of cattle; penalty, two years in the penitentiary.

*W. W. Kirk,* and *D. H. Culton,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Conviction is for theft of one head of cattle from Ben Sharp, punishment being two years in the penitentiary.

In bills of exception one and two complaint is made of the testimony of one A. L. Harrison, and of certain proceedings in connection therewith. The witness testified that he had been engaged in the banking

business for fourteen or fifteen years; that he could detect the signatures of parties and could tell by comparison of two writings whether they were made by the same person; that he was clerk of the grand jury of Swisher County, and one of his duties as such was to take down the testimony of witnesses; that appellant Bell had been before said grand jury. The witness was shown an instrument in writing and testified that appellant had signed his name thereto while before the grand jury as a witness. A document referred to in the bill as "Exhibit S-1" (but which is not otherwise described in the bill) was handed to witness and he was permitted to testify that the name "C. E. Bell" as it appeared on said exhibit and as signed to the statement in the grand jury room was written by the same person. On cross examination Harrison disclaimed being a handwriting expert. Objections were interposed to his testimony first, that the witness had not qualified to testify as to comparison of handwriting; second, that in offering the signature made by appellant before the grand jury there was an attempt to force him to give evidence against himself; third, that to answer the question would be revealing secrets of the grand jury room in a case where the truth or falsity of the evidence given therein was not under investigation. It seems to be well settled that a bank cashier or teller who has had experence in examining signatures and writing may give his opinion as to a disputed writing or signature from comparison. A witness may be an expert by reason of his experience and learning although he may not consider himself one. Crow v. State, 33 Texas Crim. Rep., 264; Bratt v. State, 38 Texas Crim. Rep., 121. The objection that using for comparison the signature of appellant made by him in the grand jury room was compelling him to give evidence against himself is untenable. The bill does not disclose the subject under investigation before the grand jury when appellant made and signed the statement. So far as we are advised it may have had no reference whatever to the present charge against him. The cases of Williams v. State, 27 Texas Crim. App., 466, 11 S. W. 481; Hunt v. State, 33 Texas Crim. Rep., 252, 26 S. W. 206; Ferguson v. State, 61 Texas Crim. Rep., 152, 136 S. W. 465, seem to furnish a precedent for the court's ruling. In Kennison v. State, 260 S. W. 174, we had occasion to review the authorities just referred to, and held that they were inapplicable to the facts then before us. We find nothing in the bills now being considered which requires application of the principle discussed in Kennison's case. We cannot sustain the contention that mere proof of appellant's signature executed in the grand jury room violates the statute which inhibits divulging the secrets of that body. (Art. 316, P. C.) Nothing relative to the proceedings were put in evidence, the only fact proven being that appellant signed some statement. To what subject the statement related is not disclosed. Addison v. State, 85 Texas Crim. Rep., 181, 211 S. W. 225, we think settles the question

against appellant's contention, and follows Wisdom v. State, 42 Tex. Crim. Rep., 579.

Bill of exception number three recites that while the witness Harrison was testifying:

"He was handed 'Exhibit S-1' and the letter that the witness Lewis Smith had testified that he took from said 'Exhibit S-1', at Ruston, Louisiana, after receiving said exhibit from the Post Office there, and was asked to examine the words "Tulia, Texas,' on the back of the exhibit and "Tulia, Texas' written at the beginning or head of the letter, and asked to state to the jury, whether, in his opinion, that 'Tulia, Texas' at the head of the letter and 'Tulia, Texas', on the exhibit were one and the same handwriting."

—and that over appellant's objection witness was permitted to answer that in his opinion they were the same handwriting. It appears from the bill that appellant made further objections to the introduction of the letter in evidence which were overruled by the court and exception reserved to the introduction of the lettr and envelope marked "Exhibit S-1." Neither the envelope nor the letter is set out in the bill and for that reason the same is incomplete and fails to furnish us with sufficient information upon which we can base any proper ruling.

Where complaint is made at the admission of evidence a bill of exception attempting to preserve the point is defective if it fails to set out the admitted evidence. (See Branch's Ann. P. C., p. 135 and note 21, Vernon's C. C. P., Art. 744, for collation of authorities.)

Lewis Smith was an admitted accomplice. In the sixth paragraph of the charge the jury was so instructed, and the law relative to an accomplice witness was embraced therein. No exceptions whatever were addressed to the charge, but the court was requested to give in lieu of paragraph six a special charge on accomplice testimony prepared by appellant's counsel. In the special charge no reason is assigned why it was deemed more appropriate than the one contained in the general instructions prepared by the court. In Boaz v. State, 89 Texas Crim. Rep., 515, 231 S. W. 790, we said:

"For the court to hold that the requesting of a special instruction, which the trial court could legitimately consider as a substantial repetition of his main charge, can take the place of an objection which should pertinently point out the matter complained of would virtually work a repeal of the statute,"

—that is, of Article 735, Vernon's C. C. P., which requires an objection to the charge to be in writing and "distinctly specifying each ground of objection." In the same case it was intimated that circumstances could arise under which a requested charge might be sufficient to raise the question of error in the absence of a specific objection to the main charge; this was discussed at length in Parker v. State, (No. 7255) decided at the last term of this court, but the

opinion has not yet been published, the mandate having been withheld to give opportunity for presenting application for writ of error to the Supreme Court of the United States upon what was deemed by the defendant's counsel as a federal question not related in any way to the point now being considered. In that case we held that where there was an entire omission from the court's charge of instruction on a pertinent issue that a requested correct special charge upon that issue would be sufficient to raise the error in omitting it without a specific objection in writing calling attention to the omission. In the present case the court did charge on accomplice testimony, and if appellant thought it erroneous or inappropriate he should have pointed out by specific objections in writing the particular matters he complained of and which his special charge was thought to remedy.

Appellant requested the court to charge that McGuyer was an accomplice. This the court declined to do, but gave a special requested charge instructing the jury that if they should find that McGuyer knew the animal in question was stolen property and that with knowledge of that fact he had retained the possession and control of said animal then in such event, McGuyer would be an accomplice, and that appellant could not be convicted on his testimony, and in this connection also told them that one accomplice could not corroborate the testimony of another. The court declined to charge that Mrs. McGuyer was an accomplice or to submit that issue to the jury. Necessarily, the correctness or otherwise of the court's action in these respects must be determined by the evidence. The stolen animal belonged to sharp. He missed it with two others about November 7th, 1922. It was taken from a stalk field in which it had been placed by the owner. The next time he saw it it was in the possession of Bivens, who was the brand inspector for Swisher County. Smith, an admitted accomplice, owned 1500 acres of land, 500 acres of which were in cultivation and under one enclosure. Smith cultivated 250 acres of this 500 acres and McGuyer cultivated the other portion on the halves as a tenant of Smith who occupied a room in the house in which McGuyer and his wife lived on the premises. After the crops had been gathered in 1922 this 500 acres was being used to pasture stock. Smith testified that he had sold appellant a stripped down Ford car for $60 and was to take in payment therefor two good calves which would average in value twenty-five or twenty-six dollars apiece; that late in the night of November 7th some one came to the house and called him, telling him that he had "the other yearling calf;" that he went out and found appellant and one Parker with the alleged stolen animal in the back of an automobile; that appellant told him that night that he had gotten it out of a "pummy field that belonged to a dutchman and that it was 'hot stuff;'" that they put the calf in the lot. Smith testified that

99 Tex. Crim.—5.

the calf remained in the lot until he left some weeks thereafter for Louisiana at which time he had McGuyer turn it out in the stalk field with the rest of his (Smith's) cattle; that up to this time McGuyer had nothing to do with it; that when witness left for Louisiana he made arrangements with McGuyer to look after the calf in question together with other cattle Smith had on the place; that before this he had told McGuyer this calf was a stolen animal. Before leaving for Louisiana Smith had made arrangements with Howard George to put this animal in with a shipment of cattle which George was expecting to make. McGuyer's testimony is to the effect that on the night Smith claims appellant brought the animal there that he heard some one call Smith and tell him that he had something but did not understand what it was, and that Smith (who had been at home up to that time during the night) went out and remained some little time; that the next morning the calf in question was in the lot where he (McGuyer) kept his milk cows and that Smith turned it into a back lot. Mrs. McGuyer's testimony was practically to the same effect relative to this matter. McGuyer denied that he at any time had anything to do with the calf in the way of exercising control or management over, it and contradicted Smith's testimony that the animal was left in his (McGuyer's) control and management at the time Smith left to go to Louisiana, but says Smith turned the animal into the stalk field himself before leaving. Both Mrs. and Mr. McGuyer say they thought the animal was stolen and had talked to one another about it. A short time after Smith had gone to Louisiana appellant came to McGuyer and asked for Smith's address, telling McGuyer, according to the latter's testimony, that the calf in question had been stolen. McGuyer claims this was the first time he had positive information that the animal was stolen, learned of Smith's address in Louisiana he mailed him a letter which although he had suspicioned it prior to that time. After appellant follows:

"Tulia, Texas, Nov. 21, 1922.

"Lewis I will write you a few lines today Lewis you have just about got us in bad by tell so much so you had better look out or they will get us in bad I didn't think you would take I think every will be o k now I let you know later see I got this stuff from Tom Parker it is understood with him and you sold them to him and he shipped if the get us up your friend Charley has talked to much so I let you here about this and they are alible to have you back so ans at once."

"C."

When Howard George got ready to ship his cattle he went to Smith's premises to get the animals he had agreed with Smith to include in his shipment. He testified that the Sharp calf was in a lot and that McGuyer helped him turn it out. George drove the calf

to the shipping pens and there the mark on it was recognized by Bivens as Sharp's mark and he held up shipment of the animal. It is not contended that George had any knowledge or intimation even that the animal had been stolen and as soon as its shipment was held up George returned it to the Smith place and turned it in the stalk field. Upon these matters McGuyer testified that when George came after the animal it was in the stalk field and that he pointed out the animal to George, but had nothing to do in any manner with removing it from the premises.

We have not undertaken to set out in detail all of the evidence but have tried to condense it upon the main points. We think it clear from the evidence in the record that the court committed no error in declining to charge the jury that as a matter of law McGuyer was an accomplice. His attitude in the matter must be viewed in connection with all the facts and circumstances surrounding his relations with Smith, and their joint possession of the 500 acres of cultivated land and the joint use thereof. The court recognized this, and gave what we believe to be an appropriate charge under the circumstances. McGuyer may have suspicioned it, or he may have even know by information from Smith or appellant that the animal was stolen, but his silence relative to the matter would not alone make him an accomplice. (See many authorities on this question under Section 705, Branch's Ann. P. C.). Smith had an equal right with him to the use of the stalk field on the cultivated land and although McGuyer may have turned the animal into the field at the direction of Smith it would be for the jury to say whether he was exercising control or possession over it, or was acting simply at the instance of Smith in doing so. It was a controverted question whether Smith put McGuyer in control or management of the animal when Smith left for Louisiana, and to make McGuyer an accomplice witness it would be necessary that he exercise control or management or authority over it after he knew the same had been stolen which would justify a conclusion that he had some criminal connection with it.

We find no error in the court's action in refusing to charge that Mrs. McGuyer was an accomplice, or in refraining from submitting that issue to the jury. Outside the fact that she may have suspicioned or known that the animal was stolen there is nothing in the record to show that she had anything to do with it whatever.

From what we have already said it follows that we think the court was not in error in refusing a special charge requested by appellant that if there was no evidence in the case other than that of Smith and McGuyer tending to connect accused with the original taking of the animal, the jury should acquit. To have given such a charge would have been tantamount to telling the jury that Mc-

Guyer was an accomplice and would have been contradictory to the charge which we think he properly did give on this subject.

We cannot agree with appellant in his contention that there is no evidence in the record outside that of the accomplice Smith tending to connect appellant with the commission of the offense. The jury would have been authorized to determine that McGuyer was not an accomplice under the facts and appellant's statement to him that the calf was stolen, in connection with an inquiry as to Smith's address in Louisiana and in connection with the letter mailed to Smith by appellant, would, we think, have a tendency at least to connect appellant with the theft of the animal. It further appears from the record that appellant fled from the State and was apprehended in the State of Colorado and brought back for trial.

Appellant introduced no evidence whatever, making no affirmative defense, but relying apparently upon his contention that the State had failed to make out a case against him.

Finding no error in the record which would justify a reversal, the judgment is ordered affirmed.

*Affirmed.*

### ON REHEARING.

MORROW, Presiding Judge.—The same questions that were given attention in the original submission have been reargued in the motion for rehearing, which shows much research and ability. We are constrained, however, to regard the matters presented properly determined in the former opinion. The motion for rehearing should be overruled, which is accordingly done.

*Overruled.*