HARRY GAMMEL V. THE STATE.

No. 15689.   Delivered April 19, 1933.
Rehearing Denied June 23, 1933.
Reported in 62 S. W. (2d) 139.

The opinion states the case.

*Wright Stubbs, Emmett Shelton* and *Dan Moody,* all of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for receiving and concealing stolen property; punishment, two years in the penitentiary.

For many years appellant had been engaged with his father and brother in a new and secondhand book business in Austin, Texas. The father had died. Appellant and his brother continued in the business which, at the time of the transaction involved, seems to have been in the hands of a receiver. Appellant was charged with having received 300 volumes of certain copies of the Special Laws of the Legislature of Texas which had theretofore been stolen by one George Hill from Mrs. Jane Y. McCallum, Secretary of State of the State of Texas. There is an attempt to raise the question of a variance between the allegation and the proof on the question of ownership, but we do not regard same as supported by sufficient testimony to call for discussion in this opinion.

The record contains five bills of exception. The first complains of testimony of Capt. Hamer of the ranger force that, after he learned that "other books were there," he went down and told appellant and his brother that he wanted the rest of those books that were hid,—"That you hid last night, that belong to the State of Texas, and I don't want a part of them, I want all of them." The objection to this was that same

amounted to no more than a hearsay accusation which did not call for a reply; an accusation by a third party. We see no need for extended discussion. Capt. Hamer had testified in substance that in his investigation of the loss of the state books he had talked to appellant who claimed to have been out on the road, etc., when certain books came into the store and not to have known of said books being at the bookstore; also that after this a small number of books were returned from the bookstore, and thereupon witness went to appellant and his brother and made the statement objected to, immediately following which, according to Capt. Hamer, he sent a couple of men down to the bookstore, to whom were turned over a truck load of books ·which were brought up to the Capitol, among which were part of the books whose theft is here charged.

The conversation and statement objected to was pertinent and admissible as leading to and part of the recovery of the alleged stolen property, and shed light on appellant's connection. therewith, and the question of his knowledge as to whether the property was stolen.

The second bill of exception is like the first. Capt. Hamer testified that he sent two men down to the store and "they turned over to these men nearly a truck load of books which were brought up to the office." This was also objected to as hearsay as to what was done by the two men so sent. In view of the fact that Mr. McWilliams, one of the men sent by Capt. Hamer, testified that he and another were so sent,. and that they received from the book store a truck load of books (in which it was shown were more than a hundred of those here charged to have been received by appellant), which they took to the Capitol, it would be idle to discuss complaint of the admission of Capt. Hamer's statement that he sent these men and that they got the books.

Bill of exception No. 3 presents objection to the testimony of Mr. McWilliams as follows: "I know the defendant, Harry Gammel. I saw him and had a conversation with him with reference to certain books during the month of July of last year. That conversation took place in his store—at his store in Austin, Travis County, Texas. I can relate the conversation that I had with Harry Gammel at that time. I went down there—George Allen and I went down there and told Mr. Gammel that Captain Hamer had sent us down there and told us to tell him to get all of the books in there that belonged to the State of Texas and turn them over to us.

After we had told him that we didn't do anything much except just stand around in the store. I couldn't tell you when it was, but it was sometime along about the first of the year. As to what, if anything, happened with reference to some books—Harry Gammel just told those employees in there to get all those books. He says, 'Get them all—get all the books that has Mrs. McCallum's name on them. I don't want any of them left in there at all.' I don't know how many books were turned over to us, but there was a truck load of them. Mr. Harry Gammel was there at the time those books were turned over to us."

The court was asked to strike this from the record because it was shown that appellant was not present, said witness having identified appellant's brother as the man with whom he had the conversation appearing in the quoted testimony, and the witness having further said that the brother was the one who directed the employees to turn over the books. We can not accept appellant's view of this matter. He was charged with receiving and concealing certain books which he admitted were brought to the Gammel bookstore by George Hill. Capt. Hamer had had a conversation with appellant and his said brother in which they were told that these men would be sent, and the purpose for which they would be sent, and that these two men were to be given, not a part but all the books there belonging to the state of Texas. It was not denied that the men came and actually got the very books or a good part of which are here alleged to have been stolen. Hill had sworn on cross-examination by defense counsel that he had been stealing books for the Gammels for a number of years, and had discussed the matter with all of them. He said in one place, "I had had conversations all the way along the line between me and Harry (appellant) and John (the brother) in regard to stealing these books." If McWilliams had properly identified John Gammel as being the one with whom he had his conversation at the time he got the truck load of books, and that he had repeated to him the instructions of Capt. Hamer, we believe it would have been admissible to prove that at this juncture John told the employees in the store to "bring all the books that had Mrs. McCallum's name on them; that he didn't want any of them left in there at all." It is a little difficult to see how this could have imputed to appellant knowledge that these books were stolen. It seems to us rather that it bears out the idea favorable to appellant that if there were any books on the premises about which there might

be doubt because the name of the Secretary of State was on them, to take them.

Diggs testified that something over a year before the transaction here involved he was on a trip with appellant and warned appellant that "you boys better quit monkeying with George Hill. You are going to get into serious trouble." This was objected to as a warning by a third person; did not call for a reply; not shown that appellant heard what was said; was hearsay; was too remote, etc. We note from Diggs' testimony as quoted in the bill that "Harry did not say anything then." The bill wholly fails to set out surrounding conversation or facts. We are not apprised as to what was said before or what was thereafter said, all of which might have been before the trial court when he ruled. Nor are we able to see that possible harm which might call for reversal, even if the matter be of doubtful admissibility, which is not conceded. This is complained of in bill of exception No. 4.

The remaining bill of exception sets out the entire charge of the court, and all the exceptions taken thereto. To discuss same seriatim would obviously lengthen this opinion and, as we think, needlessly. The court told the jury that Hill was an accomplice, and gave the law applicable as to the necessity for corroboration of said witness, but did not tell the jury as a matter of law, or submit to them as a matter for their decision, whether Ramirez or Christiansen were accomplices. In our opinion this was correct. Neither Hill, appellant, nor any other witness intimated or stated any fact which would so suggest— that either of said men did what they are shown to have done in the transportation, handling, or reception of the alleged stolen books, with any fraudulent intent or knowledge that same were stolen.

The court also told the jury that, if they believed appellant had bought the books in question without knowledge that same were stolen, or that he had in such manner received or concealed same,—or if the jury had a reasonable doubt in such regard,—they should acquit. We believe this an adequate presentation of the affirmative defensive theory, and that such clear-cut statement was better than to have gone into minute details embracing the name or names of parties from whom appellant claimed to have bought the books, or the circumstances under which same might have been bought, such as from his exception appellant seems to think should have appeared in the charge.

We find nothing in the record suggesting any danger to

appellant of being convicted of theft, or the receiving or concealing of any other property than that described in the indictment. He got the lowest penalty. If there was anything developed before the jury relative to any other stolen books save such as might have been necessary as part of the res gestae, same related to nothing specific, nor was it such as to make reversible error the failure of the court to limit—if, indeed, he could have properly limited—the purpose for which testimony regarding other books found in possession of appellant, was introduced.

Appellant urges that the testimony, if showing guilt at all, makes him guilty as a principal offender in the crime of theft, or at least as an accomplice to such crime, and that hence he could not be legally convicted of receiving and concealing the alleged stolen property. Reliance is had by appellant on the theory that the testimony of George Hill, if true, shows appellant a party to a conspiracy to steal the books in question, in which event, appellant asserts, his guilt would be that of a principal, or possibly an accomplice, in that he may have advised or even engaged Hill, in advance of Hill's theft of the books, to take them; he (appellant) not being present when the books were stolen. In appellant's supplemental brief it is argued that, if appellant and Hill conspired to take the books, and it was appellant's part of the scheme and agreed plan to provide a place of deposit for the books where they might be concealed, this would make the parties, including Hill, coconspirators, and make appellant a principal offender, in which case he would be wrongfully convicted as a receiver, etc.

Kaufman's case, 70 Texas Crim. Rep., 438, is on facts very like those before us. In that case the accomplice witness, who actually stole the goods in question, testified that for three years prior to the transaction involved he had had a contract with appellant, et al. to steal goods from railway cars and wholesale houses, which he would sell to appellant, et al.; that in every instance appellant bought these stolen goods from him, and paid him for them knowing they were stolen. This situation appears to have prevailed as to the particular goods involved in the case then before the court. This court held the testimony to establish Kaufman's guilt as a receiver and concealer. It was said: "We are clearly of the opinion that the evidence in this case justified the jury to believe that appellant knew that these goods were stolen by Howard and his associates and that he directed that they should be delivered to him by placing them in his barn, which was done. This 'was a receiv-

ing by him in the eye of the law.' It was not necessary under the law that he should personally be present, nor manually receive the property under the circumstances of this case."

It was contended in that case, on rehearing, that the accused was guilty as an accomplice and therefore not guilty as a receiver. Our court declined to discuss the matter at length, for the reason that the authorities were plain and the principle well established. It was said: "It might be that appellant could have been prosecuted and convicted, under the evidence cited by appellant, as an accomplice to the theft of the property, instead of having received and concealed it, but he has not the choice. The state has the choice of which crime originating out of the transaction it will prosecute him for. 'One answerable for a criminal transaction may be holden for any crime, of whatever nature, which can be legally carved out of his entire offending. He is not to elect, but the prosecuting power is. If the evidence shows him to be guilty of a higher offense than he stands indicted for, or a lower, or of one differing in nature, whether under a statute or at the common law, he can not be heard to complain; the question being whether it shows him to be guilty of the one charged.' 1 Bish. New Crim. Law, sec. 791; Whitford v. State, 24 Texas App., 489; Grisham v. State, 19 Texas App., 504. 'A party may in a criminal proceeding be held to answer for any offense, great or small, which can be legally carved out of the transaction.' Jackson v. State, 43 Texas, 421. 'The prosecutor had a right to carve as large an offense out of this transaction as he could, yet must cut only one.' Quitzow v. State, 1 Texas App., 47. It is needless to cite many other authorities to this effect."

In the opinion on rehearing in Bloch's case, 81 Texas Crim. Rep., 1, appears statements made upon the supposed authority of the Kaufman case, supra, which, if supported and justified, might afford ground for appellant's position in this case that, if he had conspired with Hill to steal the goods, was not present when same were stolen, but afterwards received same, he would be a principal offender and not a receiver. As a matter of fact, this is directly opposed to what was held and laid down in the Kaufman case, supra, as appears from an inspection of our opinion in that case and discussion of it in Burow v. State, 85 Texas Crim. Rep., 141, also discussed and differentiated in Kolb v. State, 88 Texas Crim. Rep., at pages 595-6, in an opinion on rehearing by Judge Hawkins. The matter is to some extent discussed in the later case of Glasser v. State, 90 Texas Crim. Rep., 119, where the only question apparently was whether

the testimony sufficed to support a conviction as a receiver, and we held it to be so upon proof that the property had been stolen by one DeVries in pursuance of an agreement with appellant and another, which property was later found in possession of the appellant in that case.

Without attempting an exhaustive analysis of the principles, or discussion of the authorities, it seems to be settled in this State that, if there be an agreement between parties by which one or more of them steal property, in the absence of the other or others, and the interest in such property of the taker or takers be ended by sale or delivery of such stolen property either to the other parties to the original agreement, or to persons other than those, either in pursuance of such agreement, or aside therefrom, and such property be so bought or received by those partaking in the original agreement or otherwise, if such purchasers or receivers be shown to have knowledge at the time of their acquisition of the fact that such property is stolen, he or they may be prosecuted and convicted of receiving and concealing such property. Otherwise, when the joint or common interest in the stolen property or its proceeds, continues after same has been delivered subsequent to its theft. It follows that, since Hill swore in this case that he sold the property outright to appellant, and had no interest in what appellant may have thereafter done with it, which latter was not controverted, appellant was properly convicted as a receiver.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The facts are stated in the original opinion. It is the theory of the state that Hill, the accomplice witness, stole certain property and sold it to appellant, and that appellant knew the property was stolen.

Complaint is made of the failure of the court to read to the jury Special Charge No. 7, containing the following language: "Gentlemen of the Jury: In connection with the necessity for the corroboration of accomplices' testimony, you are instructed that the accomplice must be corroborated both as to the theft of the stolen property—if any—and also as to the receiving of said stolen property—if any—by the defendant."

In support of his claim a number of decisions are cited which, in very cogent language, affirm the proposition that, in a case where one is charged with receiving stolen property, and reliance by the state is had upon the testimony of an accomplice witness (being in this case the thief), it is essential to the con-

viction that there be corroboration of the accomplice, both as to the theft of the property and the acquisition of it by the accused on trial with knowledge of the theft. In the present instance the evidence is sufficient to meet the demand of the law just stated. The question is whether declining to read to the jury the special charge quoted resulted in injury to appellant. In paragraph four of the main charge, the jury was told in appropriate language that there could be no conviction upon the testimony of George Hill unless the guilt of appellant was shown beyond a reasonable doubt, and not then unless there was other evidence outside of and independent of the testimony of the accomplice corroborative thereof, tending in some material manner to connect appellant with the commission of the offense charged, and even then they could not convict unless they were satisfied from all the evidence beyond a reasonable doubt that appellant was guilty. Taking note of the language of the refused special charge, and recalling that the court had in the main charge instructed the jury on the subject of accomplice testimony, the matter of consideration of the refused special charge is open to question. Article 658, C. C. P., reads: "Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection."

The charge given by the court dealt with a given subject. Complaint of the failure to give additional instructions upon the same subject-matter should be accompanied with a showing that the claimed necessity for such additional charges has been brought to the attention of the court in a manner complying with the requirements that the objection should be specifically pointed out. There was no specific objection to the main charge on the point under consideration. Discussions of the subject are found in the following cases: Parker v. State, 261 S. W., 782; Boaz v. State, 89 Texas Crim. Rep., 515, 231 S. W., 790; Crouchett v. State, 271 S. W., 99; Linder v. State, 94 Texas Crim. Rep., 316; Bell v. State, 99 Texas Crim. Rep., 61, 268 S. W., 168.

In the argument of counsel on motion for rehearing attention is directed to the law concerning the corpus deliciti in a case of receiving stolen property, viz: that it must be: "* * * established by proof * * * (1) the theft of the property; (2) the receiving of the property; and (3) knowledge upon the part of the receiver at the time of receiving it that the same had

been acquired by theft." Williams v. State, 199 S. W., 296; Crowell v. State, 6 S. W., 318, and other cases are cited.

In the present instance, if we correctly interpret the record, the theft of the property and the receiving thereof by appellant was established by evidence other than that of the accomplice. The necessity of guilty knowledge upon appellant's part when he received the property is stressed by counsel for appellant in his argument on motion for rehearing in the following language: "On the other hand, if the jury believed Hill's testimony to be true and believed the evidence offered to corroborate Hill as to the theft of the books, but disbelieved the testimony offered to corroborate Hill in so far as he testified that appellant received the books from him with guilty knowledge, then the appellant was entitled to an acquittal; but he was denied the benefit of an instruction from the court to the effect that before the jury could convict on Hill's testimony, it was necessary that they believe Hill's testimony to be true and that there was other evidence corroborating the testimony of Hill, to the effect that appellant received the property with a knowledge that it had been acquired by theft."

Reference to the refused charge shows that nothing is said therein about the necessity of appellant knowing that the property had been stolen when he received it. So, if the special charge had been given, the jury would have received no information upon the point now urged.

The record reveals abundant corroboration of the accomplice witness upon both the theft of the property by Hill, and the receiving of the property by appellant. It has been held that under such circumstances a failure entirely to charge the law regarding corroboration of an accomplice would not be held reversible error in view of our present statute, in the absence of specific objection because of the omission or a requested charge which specifically pointed out the omission which it was intended to supply. Article 658, C. C. P. See Howard v. State, 90 Texas Crim. Rep., 164, 233 S. W., 847.

At any event, the requested special charge containing no reference to or instruction regarding "guilty knowledge," but going only to the question of the reception by appellant of the property, a fact proved conclusively by witnesses other than the accomplice, this court would not be justified in granting a rehearing based upon the refusal of such charge.

The motion for rehearing is therefore overruled.

*Overruled.*